**Judy HUBER, Plaintiff,**

v.

**Simon LEIS, Defendant.**

**Civ. No. C–1–87–774.**

United States District Court, S.D. Ohio, W.D.

Jan. 4, 1989.

**132**

Robert Newman, Cincinnati, Ohio, for plaintiff.

Philip Zorn, Thomas Deye, Asst. Pros. Attys., Cincinnati, Ohio, for defendant.

## ORDER

CARL B. RUBIN, Chief Judge.

This matter is before the Court upon plaintiff's complaint filed pursuant to 42 U.S.C. § 1983 seeking redress for the deprivation of plaintiff's rights under the First Amendment to the United States Constitution by requesting declaratory and monetary damages (doc. no. 1). The parties have agreed to submit this matter to the Court for final disposition upon cross motions for summary judgment without oral hearing.

This action was originally filed on September 22, 1987 (doc. no. 1). On April 13, 1988, plaintiff filed a motion for partial summary judgment (doc. no. 5). Such motion was opposed by defendant (doc. no. 13) with accompanying affidavits (doc. nos. 8, 9, 10, 11, 12) and also supported by plaintiff (doc. no. 15). On June 29, 1988, this Court denied plaintiff's motion for summary judgment since a genuine issue of material fact existed (doc. no. 16). Subsequently the parties entered into stipulations of fact for cross motions for summary judgment (doc. no. 18) and also referred to facts stipulated in the Final Pretrial Order (doc. no. 17).

This Court has carefully examined the exhaustive memoranda and documents which the parties have filed on the merits of the claims (doc. nos. 1, 5, 8, 9, 10, 11, 12, 13, 15, 17, 18, 24, 25, 26). In accordance with Federal Rule of Civil Procedure 52, the Court does set forth its Findings of Fact, Opinion and Conclusions of Law.

## I. FINDINGS OF FACT

1. Plaintiff Judy Huber has been employed by the Hamilton County Sheriff's Office, as a deputy sheriff assigned to the Corrections Division for the past five (5) years and is currently holding the position of Correction's Officer.

2. Plaintiff's typical duties include searching incoming female detainees, taking fingerprints, checking arrest records in computer files, and such other administrative tasks.

3. Plaintiff is not responsible for any policy-making roles in the Sheriff's Office, nor does she have any public contact role other than answering routine phone calls. She refers any callers asking policy related questions to the appropriate supervisor.

4. Plaintiff does not represent the Sheriff's Office or Hamilton County in its rela-

tions with the press. She does not have a close working relationship with defendant Simon Leis, nor does she have access to confidential information of the Sheriff's Office.

5. Defendant Simon Leis (Simon L. Leis, Jr.) is and has been the duly appointed, qualified and acting Sheriff of Hamilton County, Ohio, since June 1, 1987.[1]

6. On January 1, 1987, the Hamilton County Sheriff's Office adopted the Hamilton County Sheriff's Office Rules, Regulations and Disciplinary Process. Section 1.20 ("Sheriff's Rule 1.20") reads as follows:

Any Sheriff's employee having a grievance involving another member that cannot be resolved amicably, shall first consult his immediate supervisor."

7. Plaintiff became aware of the above-quoted Sheriff's Rule 1.20 on January 1, 1987.

8. On August 6, 1987 at approximately 1:50 a.m., plaintiff's son, Charles Hans, was arrested by Patrol Officer Michael H. Fieler and Sergeant Dennis M. Lantry of the Hamilton County Sheriff's Office for criminal trespass and resisting arrest at the Colerain Township Elementary School.

9. In order to participate in the search and apprehension of three (3) other suspects, Patrol Officer Fieler handcuffed Hans to a chain link fence.

10. Shortly after the arrest of Hans, Patrol Officer Fieler notified plaintiff, who was on duty at the Justice Center, of her son's arrest.

11. Plaintiff did not complain about the manner of her son's arrest to Patrol Officer Fieler, Sergeant Lantry, her immediate supervisor nor to defendant before approaching the FBI.

12. On or about August 10, 1987, plaintiff complained to FBI agent David Lichtenfeld at the local Federal Bureau of Investigation (FBI) office alleging that her son's civil rights were violated by Patrol Officer Fieler when he handcuffed Hans to the fence.

13. Agent Lichtenfeld advised plaintiff that she should discuss the matter with defendant. He further advised plaintiff that if she was not satisfied with defendant's resolution of the incident she could return with Hans to the FBI office for further discussion.

14. On or about August 12, 1987 plaintiff approached the FBI office a second time and discussed the arrest incident of August 6, 1987 with FBI agent Edward Woods.

15. Agent Woods reviewed the complaint with the local supervisory FBI agent in charge of civil rights matters. Based upon this review, Agent Woods was instructed to close the FBI file on the incident.

16. Plaintiff and her son did not allege to either Agent Lichtenfeld or Agent Woods that defendant Leis had in any way violated, participated in, or condoned the arresting officer's alleged violation of Hans civil rights, or that the arresting officer's alleged violation of Hans' civil rights was part of a pattern, custom, policy or practice of Hamilton County, the Hamilton County Sheriff's Office, the Sheriff, or the employees of the Hamilton County Sheriff's Office.

17. Defendant Leis was personally unaware and unfamiliar with the apprehension and arrest of plaintiff's son on August 6, 1987, until after plaintiff registered a complaint to the FBI. Plaintiff has never discussed her son's arrest with defendant.

18. On or about September 1, 1987, defendant approved and issued a written reprimand to plaintiff after ascertaining that plaintiff had violated Sheriff's Rule 1.20.

## II. OPINION

■ The issue before this Court involves an inquiry into the plaintiff's First Amendment Rights. It involves a two step process in which the District Court must first determine whether the plaintiff's speech addresses a matter of public concern. If the Court finds in the affirmative, it must then balance the public employee's rights

---

1. In November 1988 Mr. Leis was elected Sheriff of Hamilton County.

of free speech in commenting upon matters of public concern against the interest of the state, as an employer, in promoting an orderly and efficient administration of public services performed through its employees. *Connick*, 461 U.S. at 142, 103 S.Ct. at 1687; *Pickering*, 391 U.S. at 568, 88 S.Ct. at 1734–1735.

■ The initial inquiry is whether plaintiff's speech can be characterized as constituting speech on a matter of public concern. The "expressly guaranteed freedoms" of the First Amendment share a common care purpose of assuring freedom of communication on matters relating to the functioning of government." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575, 100 S.Ct. 2814, 2826, 65 L.Ed.2d 973 (1980). It is well settled that a state cannot condition public employment on any basis that infringes upon the employee's constitutionally protected interest of freedom of expression. *Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983); *Branti v. Finkel*, 445 U.S. 507, 515–516, 100 S.Ct. 1287, 1293–1294, 63 L.Ed.2d 574 (1980); *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Speech which is considered that of "public concern" is certainly afforded these constitutional guarantees. However, speech by public employees which may be characterized as *not* of "public concern" involves speech which deals with individual personnel disputes and grievances and other information which would be of no relevance to the public's evaluation of the performance of governmental agencies. *McKinley v. City of Eloy*, 705 F.2d 1110 (9th Cir. 1983). Thus, when employee expression cannot be fairly considered as relating to any matter of political, social or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intensive oversight by the judiciary in the name of the First Amendment. *Connick*, 461 U.S. at 146, 103 S.Ct. at 1689–1690; *Garvie v. Jackson*, 845 F.2d 647, 650 (6th Cir.1988); *McMurphy v. City of Flushing*, 802 F.2d 191, 196–197 (6th Cir.1986). It should be forewarned that absent the most unusual circumstances, when a public employee speaks upon matters only of personal interest, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior. *Connick*, 461 U.S. at 147, 103 S.Ct. at 1690. On the other hand, speech that concerns "issues about which information is needed or appropriate to enable the members of society" to make informed decisions about the operation of their government is certainly meritorious of the highest degree of the First Amendment protection. *Thornhill v. Alabama*, 310 U.S. 88, 102, 60 S.Ct. 736, 744, 84 L.Ed. 1093 (1946).

The Supreme Court prescribed a balancing method in *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), for determining when a public employee's speech addresses a matter of public concern. The trial court must make this determination as a matter of law on the basis of "the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. at 147–148, 103 S.Ct. at 1690–1691; *McMurphy v. City of Flushing*, 802 F.2d at 197.

*Pickering* made clear that educators should be able to speak out freely on educational questions of public concern. In that case, the Court held that a teacher could not be dismissed in retaliation for a letter publicly criticizing the School Board's allocation of school funds and its methods of informing, or not informing, voting taxpayers of the reasons why additional tax revenues were being sought for the school system. The Court's professed goal was a "balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* 391 U.S. at 568, 88 S.Ct. at 1734–1735. In reaching its conclusion, the Court considered two factors; (1) Pickering's criticism was in no way directed toward anyone with whom he personally worked on a daily basis, and (2) that the subject on which

Pickering commented, the school system's need for additional funds, was a question determined by popular vote and obviously a matter of public concern and interest. *Id.* at 569–570, 571, 88 S.Ct. at 1735–1736, 1736.

By contrast, *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), presented a case in which an employee's criticism of her superior threatened to undermine authority and morale in a government workplace. Myers, an Assistant District Attorney, was dismissed based on her refusal to accept a transfer and also on her insubordination by circulating an office questionnaire regarding various matters, including office morale and pressure to work in political campaigns. Although the Court found that Myers' question regarding pressure to work in political campaigns touched on a matter of public concern, the Court balanced Myers' interest against the state's interest. It concluded that "The limited First Amendment interest involved here does not require that [the employer] tolerate action which he reasonably believed would disrupt the office, undermine his authority, and destroy close working relationships." *Id.* at 154, 103 S.Ct. at 1694.

The three most recent instructive cases on this issue in the United States Court of Appeals for the Sixth Circuit are *Marohnic v. Walker*, 800 F.2d 613 (6th Cir.1986); *McMurphy v. City of Flushing*, 802 F.2d 191 (6th Cir.1986); and *Garvie v. Jackson*, 845 F.2d 647 (6th Cir.1988).

*Marohnic* involved a situation where an employee of the Barren River Regional Mental Health–Mental Retardation Board ("Board") aided in an investigation of Medicaid fraud occurring at the Board. Retaliatory conduct ensued by the Board's Executive Director and Mahronic was forced to resign. He filed a civil rights action under 42 U.S.C. § 1983 which ended in a settlement agreement. Mahronic then pursued alternative employment but encountered enormous difficulty, apparently from bad recommendations of his former employer. He subsequently filed a second action alleging that those recommendations were violations of both the settlement agreement and his First Amendment rights.

The United States Court of Appeals for the Sixth Circuit ultimately found that Mahronic's speech involving corruption in government to the Kentucky Attorney General was a matter of public concern and therefore protected by the First Amendment against any negative actions by his former employer.

The second of these cases is *McMurphy v. City of Flushing*, 802 F.2d 191 (6th Cir.1986) which involved among other matters, statements made by a police officer to a Police Chief and Police Lieutenant and then further made to persons outside the police establishment. The Sixth Circuit determined that in this instance these remarks to and about the Police Chief and Lieutenant were insubordinate and served no public purpose. Most of the officer's accusations, threats and abusive conduct toward his superiors were simply made in spite which the Court derived from the obvious overtones of personal frustration.

The final case addressing this issue is *Garvie v. Jackson*, 845 F.2d 647 (6th Cir. 1988). The plaintiff, Peter Garvie, Head of the University of Tennessee's Department of Speech, presented several concerns to the Provost regarding certain actions by the Dean of the Department. Although this case turned on the doctrine of qualified immunity, the United States Court of Appeals for the Sixth Circuit found that a department head's criticism of his superior's actions regarding the allocation of funds within a department, review of faculty grievances, and departmental votes on faculty nonretention were not matters of public concern. The record showed that Garvie's criticisms more closely resembled an employee's complaints regarding his superior's actions.

▮ In light of *Pickering* and its progeny, this Court finds that the public employee speech in the present case is substantially involved in matters of public concern "and is therefore entitled to the highest level of protection." Plaintiff's speech was motivated by her belief that her son's constitutional rights were violated by Deputy

Fieler on August 6. Clearly it is a matter of public concern to the citizens of Hamilton County that the Sheriff's Deputies are conducting themselves lawfully in the performance of their duties. An exhaustive review of the record does not reveal that plaintiff's inquiry to the FBI represents threats, abusive conduct, spite or any other personal frustration toward her colleagues or superiors. This Court also notes as the Supreme Court did in *Pickering* that plaintiff's complaint was not directed at anyone she would be working with on a day to day basis.

Once speech is determined to be a matter of public concern, the Court must further balance the individuals First Amendment interest against the interest of the employer in conducting an orderly and efficient office maintaining authority and also close working relationships.

This Court has carefully considered the Sheriff's reasons and objectives in enacting Rule 1.20 which are the maintenance of strict discipline, high morale, first-rate job competence, and a unified effort at public service among all Sheriff's Office employees, thereby earning, projecting and maintaining a well-deserved positive public image of the Sheriff's Office and employees. It should be observed in passing that Rule 1.20 does not bar any expression by anyone, it only requires a consultation with a supervisor as an initial step to resolve internal conflicts.

Furthermore, as the Supreme Court emphasized in *Connick*, the matter of closeness of working relationships is a critical factor in the Court's determination. When close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate. We do not see the necessity for an employer to allow events to unfold to the extent that the disruption of the office and the destruction of working relationship is manifest before taking action. 461 U.S. at 151–152, 103 S.Ct. at 1692–1693.

In this light this Court finds that the limited First Amendment interest involved here does not require that the defendant tolerate action which he reasonably believed would disrupt the office, undermine his authority and possibly destroy close working relationships. Plaintiff's actions already have and further enhance the potential for undermining the authority of the Sheriff. Finally, this Court notes that the action of the Sheriff was limited to a written reprimand and did not rise to any drastic level such as discharge from employment.

### III. CONCLUSIONS OF LAW

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1343 and the First Amendment to the Constitution of the United States.

2. A public employee's speech is constitutionally protected when it is characterized as speech on a matter of public concern. *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

3. Speech is considered relating to a matter of public concern when it is directed toward any matter of political, social or other concern to the community. *Connick, supra.* Such a determination is made as a matter of law on the basis of the content, forum and context of a given statement as revealed by the whole record. *Connick, supra.*

4. Plaintiff Judy Huber's speech touched upon a matter of public concern as to the manner in which Sheriff's Deputies lawfully conduct themselves in performing an arrest.

5. If speech touches upon a matter of public concern, the Court must then balance the individual's First Amendment right against the employer's interest in maintaining an orderly, efficient and unified performance of public duties. *Connick, supra.*

6. In the instant situation, the interest of plaintiff Huber in asserting her public concerns does not outweigh the enactment and implementation of Sheriff's Rule 1.20 to avoid disruption of the office, undermine the Sheriff's authority, or destroy close working relationships.

In accordance with the foregoing and for the reasons contained herein, plaintiff Judy Huber's motion for summary judgment as to all claims in the complaint is hereby DENIED and defendant Simon Leis's motion for summary judgment as to all claims in the complaint is GRANTED.

It is so ORDERED.