891 F.2d 290
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Edward I. ISIBOR, Plaintiff-Appellant,
v.
BOARD of REGENTS of the STATE UNIVERSITY and COMMUNITY
COLLEGE SYSTEM of the STATE OF TENNESSEE, et al.,
Defendants-Appellees.
 No. 88-6286.
 United States Court of Appeals, Sixth Circuit.
 Dec. 14, 1989.
 
 Before DAVID A. NELSON and RYAN, Circuit Judges, and MEREDITH, District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Plaintiff Edward I. Isibor appeals the judgment for the defendants on his Title VII salary discrimination claim, 42 U.S.C. § 2000e et seq., and his § 1983 first amendment retaliatory discharge claim, 42 U.S.C. § 1983.
 
 
 2
 On the salary discrimination claim, the district court found that plaintiff failed to prove that the reasons articulated by defendants for plaintiff's salary level were merely pretextual.
 
 
 3
 On the retaliatory discharge claim, the court found that defendants' interest in fulfilling its educational mission outweighed plaintiff's free speech interest, and that, in all events, defendants established that plaintiff would have been terminated absent the exercise of his free speech right.
 
 
 4
 We conclude that the district court did not clearly err in finding for defendants on both of plaintiff's claims, and therefore, we affirm.
 
 I.
 
 5
 In 1975, plaintiff, a black, Nigerian-born, naturalized citizen, was hired as Dean of Tennessee State University's (TSU) School of Engineering and Technology. In 1987, he was removed as dean but remained on the TSU faculty as a tenured professor. Following his termination as dean, plaintiff filed suit for salary discrimination under Title VII, 42 U.S.C. § 2000e et seq., and for retaliatory discharge for exercising his first amendment right to free speech in violation of 42 U.S.C. § 1983.[1] Plaintiff's salary discrimination suit was based on the claim that his salary as engineering dean at TSU was less than was paid to the white male engineering deans at Memphis State University (MSU) and Tennessee Technological University (Tech). TSU, MSU and Tech are governed by defendant state Board of Regents. Plaintiff's § 1983 retaliatory discharge claim is that he was removed as dean at TSU in retaliation for his public statements critical of TSU's management of its financial affairs.
 
 A.
 
 6
 Plaintiff sought back pay for his Title VII salary discrimination claim from the Board of Regents, its former Chancellor Roy S. Nicks, and TSU. He sought reinstatement and damages for his § 1983 retaliatory discharge claim against Board of Regent's Chancellor Thomas Garland, TSU President Otis L. Floyd, and TSU Vice President George W. Cox.
 
 
 7
 The district court ruled prior to trial that plaintiff's salary discrimination claim was restricted to the period from January 9, 1985 until June 30, 1987, the date of his removal as dean, since any Title VII claims prior to January 9, 1985 were barred by the statute of limitations. The court also held that Chancellor Nicks could be sued only in his official capacity under Title VII.
 
 
 8
 The court also held that the individual defendants, Garland, Floyd and Cox, were entitled to qualified immunity to civil damages on plaintiff's § 1983 retaliatory discharge claim because public officials could have reasonably disagreed on whether plaintiff's public statements were protected by the first amendment. The court noted, however, that since plaintiff sought injunctive relief by way of reinstatement, the § 1983 retaliatory discharge claim against the individual defendants remained.
 
 
 9
 Following a bench trial, the district court dismissed both of plaintiff's claims. The court found that plaintiff failed to prove that defendants' stated reasons for paying plaintiff a salary lower than was being paid to engineering deans at MSU and Tech were pretextual. The court also found that TSU's interest in fulfilling its educational mission outweighed plaintiff's free speech interest and, in any case, that plaintiff would have been terminated even absent his protected speech since the proofs established that plaintiff engaged in an ongoing pattern of abusive and insubordinate behavior warranting removal from the deanship. This appeal followed.
 
 II.
 
 10
 The shifting burdens of proof in a Title VII disparate treatment case require that the plaintiff must first prove by a preponderance of the evidence that a prima facie case of discrimination exists. The burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its actions. The plaintiff must then prove by a preponderance of the evidence that the nondiscriminatory reason offered by the defendant for its action was not the true reason but a mere pretext. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).
 
 
 11
 Plaintiff contends that the district court erred in finding that plaintiff failed to prove, at step three of the process, that the nondiscriminatory reasons articulated by defendants were pretextual.
 
 
 12
 At trial, the facts established that for academic year 1984-1985 plaintiff received a salary of $58,838 while the engineering deans at MSU and Tech received salaries of $59,920 and $61,212, respectively. In 1985-1986, plaintiff received $62,638, the MSU engineering dean received $64,000 and the Tech engineering dean received $64,884. In 1986-1987, plaintiff received $65,487, the MSU engineering dean received $69,000 and the Tech engineering dean received $68,496. The TSU president's salary in 1984-85 was $59,000; in 1985-86 it was $65,000, and in 1986-87 it was $68,300.
 
 
 13
 Defendants produced evidence showing that salary recommendations for university personnel came from the universities themselves and were approved by the Board of Regents, and that there was no attempt to make the salaries uniform among the universities under the Board's control. The only salary set by the Board was the salary of the university presidents. The policy, according to the defendants, was that the president's salary was based on the size and complexity of the university he served, and operated as a cap on all other salaries paid to personnel of that institution except the salaries of the deans of the medical or law schools. In turn, the salaries of the deans depended on the size and complexity of their department and the financial resources of the university.
 
 
 14
 Plaintiff contends that the Board repeatedly rejected TSU president's recommendations for salary increases for plaintiff, despite the fact that TSU had sufficient financial resources. The facts established that due to TSU's chronic overstaffing problems, the pool of funds from which salaries could be drawn was small. In the 1984-85 academic year, the TSU president recommended a salary increase for plaintiff that exceeded the salary the Board set for the TSU president and, therefore, the Board of Regents, at the TSU president's request, rejected the recommendation. In 1985-86, the TSU president, upon his departure from the university, made a belated recommendation to the Board to increase plaintiff's salary. The Board referred the proposed increase to TSU's new interim president for review, but no recommendation was ever resubmitted to the Board. In 1986-87, the recommended increase in plaintiff's salary was approved by the Board.
 
 
 15
 Plaintiff contends, contrary to the defendant's claim, that the president's salary did not operate as a cap on the dean's salary since the deans of engineering at MSU and Tech made more than the president of TSU. However, the proofs show that the deans at MSU and Tech were not paid more than the presidents of their respective schools except that in 1986-87, Tech's dean of engineering made $200 more than Tech's president. The district court found the salary differential reasonable since Tech had an interim president at the time. Plaintiff points out that TSU had an interim president from 1985 through 1987. We note, however, that it was academic year 1984-1985 that plaintiff's salary increase was rejected because it exceeded the salary of the TSU president. Thus, the defendant's evidence that a president's salary operated as a cap upon a dean's salary was not refuted by plaintiff.
 
 
 16
 Plaintiff also contends that the size and complexity of the engineering programs at the three universities did not affect the dean of engineering's salary since MSU's dean of engineering was paid more in 1986-87 than the engineering dean at Tech although Tech had the largest engineering program. The district court found that salaries were drawn from the revenues generated and that the MSU dean was paid more because there was a larger pool of funds available that year for salaries at MSU due to increased enrollment.
 
 
 17
 Plaintiff also contends that the size and complexity of the engineering program were irrelevant since associate dean of engineering salaries at the universities were not determined according to those criteria. The district court found that the salaries of the associate deans could not be compared since their job descriptions varied from university to university.
 
 
 18
 In sum, the district court found that plaintiff failed to prove that defendants' nondiscriminatory reasons for plaintiff's lower salary were a mere pretext. The court noted, in addition, that plaintiff was the highest paid administrator at TSU while the same could not be said for his counterparts at MSU and Tech.
 
 
 19
 We conclude that the district court's finding that plaintiff failed to prove that defendants' nondiscriminatory reasons for the salary differences among the engineering deans at MSU, TSU and Tech were mere pretext is well supported in the evidence and is not, therefore, clearly errouneous. Therefore, we shall affirm the judgment for defendants on plaintiff's Title VII salary discrimination claim.
 
 III.
 
 20
 When a public employee alleges retaliation for the exercise of his constitutional right to free speech, the court must determine, first, whether the employee's comments address matters of public concern, Connick v. Myers, 461 U.S. 138, 145 (1983). If so, then the court must balance the employee's interest to speak against the employer's interest in promoting the efficient performance of its public service, Pickering v. Board of Education, 391 U.S. 563, 568 (1968). Then the employee must show that the protected comments were a substantial or motivating factor in his discharge, while the employer has the opportunity to show by a preponderance of the evidence that it would have discharged the employee even absent the protected speech, Mt Heathy City Board of Education, 429 U.S. 274, 287 (1977).
 
 
 21
 The specific questions before us regarding plaintiff's retaliatory discharge claim are 1) whether the district court erred in finding the Pickering balancing test weighed in defendants favor, and 2) whether the district court erred in finding that under the Mt Heathy causation test, the defendant established that plaintiff would have been terminated even absent the protected conduct.
 
 
 22
 The Pickering balancing test requires that a plaintiff's comments be considered in the context in which they were spoken. Connick, 461 U.S. at 152-53. Comments which adversely affect close working relationships or disrupt the maintenance of discipline or cause disharmony among coworkers may tip the balance in a defendant's favor. Anderson v. Evans, 660 F.2d 153, 158 (6th Cir.1981).
 
 
 23
 The record shows that Dr. Isibor was outspoken on many matters, including allegations of misappropriation of funds from a General Electric grant given to TSU's School of Engineering and a one million dollar investment made by TSU through an investment firm that went bankrupt. However, plaintiff's comments failed to expose any wrongdoing, and indeed were made after the facts were already publicly disclosed. Plaintiff's comments on the misappropriation of grant funds came after a full investigation revealed that plaintiff's unauthorized conduct in misdirecting some of the funds to the TSU Foundation, an unauthorized recipient, was the principal cause of the misappropriation. Similarly, plaintiff's comments on the one million dollar investment loss, including a radio talk show comment that a university budget department employee had misappropriated or stolen the money, came after the investment was almost fully recovered.
 
 
 24
 The district court found, with ample support in the record, that plaintiff's comments were made to discredit those he felt were plotting against him. He repeatedly made reckless accusations and baseless attacks on fellow administrators. His comments were not supported by facts but reflected instead his refusal to accept the answers given to him by TSU administrators to his inquiries. We find no error in the district court's conclusions that plaintiff's comments interfered with the efficient functioning of TSU and that defendants' interest in fulfilling its educational mission outweighed plaintiff's free speech interest. Pickering, supra.
 
 
 25
 In any case, the district court was justified in concluding that defendant's proved by a preponderance of the evidence that plaintiff would have been removed as dean even if his public statements had not been made. Mt Heathy City Board of Education v. Doyle, 429 U.S. 274, 287 (1977). There was overwhelming proof of plaintiff's insubordinate and abusive behavior toward his supervisors, fellow faculty members and employees of TSU. Therefore, we shall affirm the judgment of dismissal of plaintiff's free speech retaliatory discharge claim.
 
 IV.
 
 26
 Plaintiff also contends that the trial judge erred in failing to recuse himself under 28 U.S.C. § 455(a).[2] Plaintiff asserts that the district judge could not objectively weigh the evidence in the case since he believed plaintiff's witnesses were members of a faction who opposed the judge's order in an earlier case desegregating traditionally black TSU.
 
 
 27
 28 U.S.C. § 455(a) requires a judge disqualify himself when his impartiality may reasonably be questioned. The statute states:
 
 
 28
 Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned. 28 U.S.C. § 455(a).
 
 
 29
 The test is an objective one and asks whether a reasonable person, knowing the surrounding circumstances, would consider the judge impartial. United States v. Norton, 700 F.2d 1072, 1076 (6th Cir.1983), cert. denied, 461 U.S. 910 (1985). The bias must stem from an extrajudicial source rather than from participation in judicial proceedings. Demjanjuk v. Petrovsky, 776 F.2d 571, 577 (6th Cir.1985), cert. denied, 475 U.S. 1016 (1986). "Impressions based on information gained in the proceedings are not grounds for disqualification in the absence of persuasive bias." In re Khan, P.S.C., 751 F.2d 162, 164 (6th Cir.1984) (quoting United States v. Porter, 701 F.2d 1158, 1166 (6th Cir.1983), cert. denied, 464 U.S. 1007 (1983)). A district court's decision not to recuse itself will be upheld absent an abuse of discretion. In re Khan, P.S.C., 751 F.2d 162, 165 (6th Cir.1984); Johnson v. Trueblood, 629 F.2d 287, 290 (3rd Cir.1980), cert. denied, 450 U.S. 999 (1981).
 
 
 30
 Plaintiff's recusal request was made after five days of trial and after certain plaintiff witnesses testified about the racial change in TSU following the court's decision in Geier v. Alexander, 593 F.Supp. 1263 (M.D.Tenn.1984), aff'd, 801 F.2d 799 (6th Cir.1986), wherein the court approved a consent decree that included affirmative action provisions to aid in the desegregation of traditionally black TSU. Two of plaintiff's witnesses testified that they were opposed to the integration of TSU.
 
 
 31
 In response to plaintiff's recusal motion, the court reassured plaintiff that his claims would be decided based on the proofs presented. The court thought it possible that the underlying controversy in this case arose from the opposition to TSU's integration but did not believe such an issue was presented by the proofs. Plaintiff cites nothing in the record to suggest that the court thought the underlying issue was one of desegregation, or that its prior desegregation order in any way affected its conclusion in this case, and no such inference can reasonably be drawn from the court's opinion.
 
 
 32
 We conclude the district court did not abuse its discretion in denying the motion to recuse itself.
 
 V.
 
 33
 Finally, plaintiff argues that the court erred in granting the individual defendants, Garland, Floyd and Cox, qualified immunity from civil damages on the retaliatory discharge claim because "public officials could reasonably have disagreed over whether plaintiff's 'expressions of concern' were protected by the First Amendment."
 
 
 34
 Prior to trial, the court granted qualified immunity to Garland, Floyd and Cox for civil damages arising from plaintiff's free speech retaliatory discharge claim but held that the claim remained viable since plaintiff also requested he be reinstated as dean. Since we upheld the district court's finding that the individual defendants did not remove plaintiff as dean due to plaintiff's exercise of his first amendment right and since plaintiff's request for civil damages arises from the same claim, we need not address this issue.
 
 
 35
 However, based upon the nature of plaintiff's comments as discussed in II infra, we conclude that reasonably competent officials could have disagreed on whether and to what extent plaintiff's comments were protected by the first amendment. Garvie v. Jackson, 845 F.2d 647, 650 (6th Cir.1988). Moreover, contrary to plaintiff's assertion, whether qualified immunity attaches is a question of law to be decided by the trial court before trial. Id. at 649. Thus, the trial court correctly decided the issue of qualified immunity prior to trial.
 
 
 36
 For the reasons set forth above, we AFFIRM the judgment of the district court dismissing plaintiff's claims.
 
 
 
 *
 The Honorable Ronald E. Meredith, United States District Judge for the Western District of Kentucky, sitting by designation
 
 
 [1]
 Plaintiff also alleged that in retaliation for exercising his first amendment right, he was denied extra service pay for "grant work" he performed. The district court found the refusal to pay plaintiff the extra service pay he requested was not due to any constitutionally prohibited motive. Plaintiff did not appeal this ruling of the district court
 
 
 [2]
 Plaintiff concedes that 28 U.S.C. § 455(a) is his only avenue for challenging the denial of his motion for recusal since plaintiff failed to file a party affidavit as required by 28 U.S.C. § 144