**Frederick GIES, Plaintiff,**

v.

**Harley E. FLACK, et al., Defendants.**

**No. 3:96cv61.**

United States District Court,
S.D. Ohio,
Western Division.

July 6, 2007.

DECISION AND ENTRY SUSTAINING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, CONSTRUED IN PART AS A MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1) (DOC. # 54); JUDGMENT TO ENTER ACCORDINGLY; TERMINATION ENTRY

RICE, District Judge.

Plaintiff Frederick Gies ("Plaintiff" or "Gies") brings the present action against Harley E. Flack and John F. Fleischauer ("Defendants") in their official capacities as President and Provost, respectively, of Wright State University ("WSU"). Gies seeks declaratory and injunctive relief under 42 U.S.C. § 1983 for alleged deprivations by Defendants acting under color of state law of his rights under the First and Fourteenth Amendments of the United States Constitution. Subject matter jurisdiction as to those claims not barred by the Eleventh Amendment is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1343.

I. *Background* [1]

This case arises from circumstances surrounding both the June 15, 1995, removal of Plaintiff, a tenured professor at WSU, from his position as Dean of the College of Education and Human Services ("College"), and his subsequent suspension from teaching assignments and faculty participation at that College.

Plaintiff was appointed Dean of the College on August 1, 1987, at which time he also held tenure. Flack became President of WSU on February 1, 1994,[2] and Fleischauer became Provost of WSU on September 29, 1995.

On March 6, 1995, Gies met with Flack, Will Hutzel (then WSU Provost) and Gwen Mattison (WSU counsel) to discuss irregularities perceived by WSU officials with respect to Gies. Specifically, according to Plaintiff, Flack made the following five charges at the March 6 meeting: (1) that Gies had misappropriated income from WSU in connection with a Tortola, British

---

1. For purposes of ruling on Defendants' Motion for Summary Judgment, the Court will construe the facts, and all reasonable inferences drawn therefrom, in a light most favorable to the Plaintiff, who is the non-moving party.

2. Flack died on March 29, 1998, prior to the filing of the Second Amended Complaint. In his Response, Plaintiff moves, pursuant to Fed.R.Civ.P. 25, to substitute Flack's successor for Flack in this matter. However, because the Court herein dismisses all of Plaintiff's claims, Plaintiff's motion for substitution is overruled as moot.

Virgin Islands ("BVI") program; (2) that Gies had employed his own children at WSU; (3) that Gies had jeopardized accreditation as a consequence of the BVI program; (4) that Gies had required students to purchase copies of a journal for which he was an editor and appropriated the income to his personal benefit; and (5) that Geis had solicited a personal services contract from Dr. James Williams of the Dayton Public Schools (Gies Affidavit in Support of Motion for Temporary Restraining Order ("Gies Affidavit") Doc. # 2 at ¶ 5). In response, Gies attempted to refute the charges orally, as well as in writing in a letter describing his side of the story.

On March 24, 1995, Flack sent a letter to Jim Petro, Ohio State Auditor, concerning Gies. Copies of the letter were also sent to the Governor, the Ohio Board of Regents Chancellor and the WSU Board of Trustees.

On March 27, 1995, Gies met with Hutzel and Mattison and was asked to resign or go on administrative leave, of which he chose the latter. Thereafter, Geis had no control of College accounts. On the next day, March 28, 1995, Flack directed the WSU Office of Public Relations to issue a news release to the media accusing Gies of unethical and illegal conduct prompting an investigation. Flack and Fleischauer subsequently caused a second press release to issue on November 2, 1995, accusing Gies of serious improprieties. Finally, on June 15, 1995, Flack sent Gies a letter notifying him that he was removed as Dean of the College. Flack sent a copy of this letter to Hutzel, Gregory Bernhardt (Acting Dean of the College), Mattison and Joyce Carter (WSU Director of Human Resources).

On July 17, 1995, Acting WSU Provost Lillie Howard sent Gies a letter informing him of the reassignment of his office to a room in the basement of the WSU Kettering Center in downtown Dayton, which had neither windows nor a telephone, directed him not to have professional contact with any College faculty or staff absent Bernhardt's approval and advised him to contact Bernhardt if he needed to be on campus. After Gies returned from administrative leave, Bernhardt assigned him duties for the 1995–96 academic year, which included preparation of accreditation materials and reviewing of a proposal for a doctoral program in the College, but which did not include teaching assignments.

On October 9, 1995, Fleischauer sent Flack a letter indicating that there was just cause to remove Gies as a tenured faculty member and set forth a statement of eleven charges pursuant to Section 2, Article VII of the WSU handbook, which contains procedures for removal and suspension of tenured faculty. Gies also received this letter and the charges. The parties attempted to resolve these issues informally at a mediation session on November 8, 1995. No resolution was reached. As the detenurization process moved forward, Gies filed various motions to continue, which were denied, including one seeking a continuance of a February 28, 1996, hearing, in which he asserted his Fifth Amendment right not to incriminate himself. On February 26, 1996, Gies filed the present action seeking injunctive relief to stop the detenurization process. A hearing on said injunctive relief was continued because Gies asserted his right to remain silent. Subsequently, a stay was entered pending resolution of Grand Jury proceedings against Gies (Doc. # 23).

On May 17, 1996, the Greene County Grand Jury returned a 27–count indictment, which included felony theft of WSU funds, against Gies. Gies plead guilty to a violation of Ohio Rev.Code § 2923.32 (engaging in a pattern of corrupt activity), a first degree felony, and agreed to terminate his employment relationship with

WSU prior to sentencing. Accordingly, Gies sent Fleischauer a letter on April 11, 1997, indicating that he was retiring from WSU effective at the end of the 1996–97 academic year. In response, in a letter dated April 14, 1997, Fleischauer stated that Gies was not eligible for retirement and accepted his resignation, effective April 14, 1997. Because of this, Gies claims that he lost his pay and fringe benefits during the period between April 14, 1997, and June 30, 1997.

Gies was sentenced on June 17, 1997, to incarceration as well as restitution to WSU of $43,588.66, less any money owed to him by WSU. The restitution order was subsequently modified to reflect that WSU owed Gies $20,447.31 in vacation payout and wages, but Gies claims that he was not given credit for money owed him other than for vacation days.

The original Complaint in this matter sought injunctive, declaratory and other relief under 42 U.S.C. § 1983, and named various individuals in their official capacities as employees of WSU and the State of Ohio, including Flack and Fleischauer. Gies subsequently amended his complaint by dropping the State of Ohio Defendants. The First Amended Complaint alleged that Defendants failed to provide Gies with a name-clearing hearing after allegedly making false, public allegations against him, in violation of the Fourteenth Amendment (Claim 1); that Defendants failed to follow WSU's handbook procedures for removing and/or suspending tenured faculty, also in violation of the Fourteenth Amendment (Claim 2); and that Defendants removed the trappings of his tenure pre-detenurization, in violation of the First and Fourteenth Amendments (Claim 3). After the Court sustained in part and overruled in part a motion by Defendants to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim Upon Which Relief Can Be Granted (Doc. # 20), Gies filed his Second Amended Complaint (Doc. # 34). That Complaint alleges the same three claims, plus a fourth claim, alleging that Plaintiff was prematurely terminated without due process, and that he was deprived, without due process, of certain benefits due to him because of his retirement status. Plaintiff seeks a declaration with respect to each of these claims that Defendants violated his constitutional rights. The Second Amended Complaint additionally prays for injunctive relief including back pay as well as an order that Plaintiff receive a name-clearing hearing and that he be reinstated to the position of Dean of the College.

Specifically, Plaintiff alleges that the stated reason for his removal from the position of Dean—that financial accounts for which he was responsible had incurred major deficits and irregularities, causing significant financial difficulties to WSU—was false and that Flack did not receive approval from WSU's Board of Trustees before removing him. He further alleges that Flack issued a false public statement of a stigmatizing nature at the time of his removal as Dean, which had a direct impact on his ability to seek employment. He also alleges that the actions taken following his removal as Dean, but before the commencement of the formal detenurization process, essentially stripped him of the benefits of his tenured position.

The matter is currently before the Court on Defendants' Motion for Summary Judgment, construed in part as a Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Fed.R.Civ.P. 12(b)(1) (Doc. # 54). For the reasons that follow, Defendants' motion is sustained in its entirety.

II. *Standards Governing Motions for Summary Judgment*

Summary judgment must be entered "against a party who fails to make a show-

ing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548; *see also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial") (quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law, Fed.R.Civ.P. 50). *Street v.*

*J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Michigan Protection and Advocacy Serv., Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir. 1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to

the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure, § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990); *see also L.S. Heath & Son, Inc. v. AT & T Information Sys., Inc.,* 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment ..."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

III. *Analysis*

In addition to arguing that Plaintiff's claims fail on their merits, Defendants argue that Plaintiff is barred by the Eleventh Amendment from bringing suit in this Court. Because Defendants' argument under the Eleventh Amendment implicates this Court's subject matter jurisdiction, the Court addresses that issue before addressing the merits of Plaintiff's claims.

A. *Sovereign Immunity*

■ Defendants argue that summary judgment is proper because Plaintiff's claims are barred by sovereign immunity. Rather than Rule 56, though, Defendants' sovereign immunity argument is actually a motion under Rule 12(b)(1), since the applicability of the Eleventh Amendment bars this Court from having subject matter jurisdiction. *Fairport Int'l Exploration, Inc. v. Shipwrecked Vessel Known as THE CAPTAIN LAWRENCE,* 105 F.3d 1078, 1082 (6th Cir.1997) ("it is well-settled that when the Eleventh Amendment applies to bar suit against a state, federal courts are divested of subject-matter jurisdiction"). Since the analysis is different with respect to Plaintiff's various claims, the Court will address the impact of the Eleventh Amendment on each claim separately, after setting forth some basic principles of Eleventh Amendment jurisprudence.

■ The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any foreign state." Notably, although the text of the Amendment does not expressly preclude citizens from suing their *own* state in federal court, the Supreme Court has long interpreted it to bar such suits due to the fundamental principle of sovereign immunity. *See Welch v. Texas Dept. of Highways and Public Transp.,* 483 U.S. 468, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987); *Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974) ("While the Amendment by its terms does not bar suits against a State by its own citizens, this Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State"); *Hans v. Louisiana,* 134 U.S. 1, 15, 10 S.Ct. 504, 507, 33 L.Ed. 842 (1890) (reasoning that it would be "anomalous" to allow a sovereign state to be sued by its own citizens in federal court when it can-

not be sued by citizens of other states or nations). In addition, the Eleventh Amendment only bars those suits against the state that are brought in federal court, and so does not prevent analogous suits from being brought in state court.

 It is well-established that, absent consent, suit against a state or one of its instrumentalities in federal court is barred by the Eleventh Amendment. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) ("in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. This jurisdictional bar applies regardless of the nature of the relief sought."). Here, of course, Plaintiff has brought suit not against the State of Ohio itself (or one of its instrumentalities), but against two individuals in their official capacity as officers at WSU, a public university in the State of Ohio. Nonetheless, the Supreme Court has held that a suit against state officials in their official capacity is akin to a suit against the state. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989) ("a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself"). Accordingly, any claim for money damages brought against the Defendants in their official capacities is barred by the Eleventh Amendment. *Edelman,* 415 U.S. at 663, 94 S.Ct. at 1356 ("Thus the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment"); *Thiokol Corp. v. Department of Treasury, State of Mich.,* 987 F.2d 376, 381 (6th Cir.1993) (*reh'g denied* ) (noting that the Eleventh Amendment "also bars suits for monetary relief against state officials sued in their official capacity"). Therefore, to the extent the Plaintiff's constitutional claims seek monetary relief from Defendants in their official capacities—for example, back pay with benefits, front pay with benefits, compensatory damages, punitive damages, interest, and costs—they are barred.[3]

 To the extent that Plaintiff's claims seek *prospective* injunctive or declaratory relief, however, they are not barred. This exception to the general rule of Eleventh Amendment immunity was announced by the Supreme Court in *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), and is justified by "the need to promote the vindication of federal rights," although this "need to promote the supremacy of federal law must be accommodated to the constitutional immunity of the states." *Pennhurst,* 465 U.S. at 105, 104 S.Ct. at 910. In furtherance of this balancing of interests, the Supreme Court has distinguished between so-called "retroactive relief," which is not permissible under the *Young* doctrine, and "prospective relief," which is permissible thereunder. *Edelman,* 415 U.S. at 664–67, 94 S.Ct. at 1356–58. The Sixth Circuit has described this distinction as follows:

> Whether a suit against State officials in their official capacity is deemed to be against the State [and therefore impermissible] depends on whether the plain-

---

**3.** The Court notes that attorney fees *are* permissible under the Eleventh Amendment when paid from state treasuries to successful plaintiffs in civil rights actions pursuant to 42 U.S.C. § 1988. *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978).

Therefore, this requested relief is not barred directly by the Eleventh Amendment. (Nevertheless, because the Court herein dismisses all of Plaintiff's § 1983 claims, Plaintiff is not successful in asserting any of said claims and is therefore not entitled to attorney fees.)

tiff seeks "retroactive" or "prospective" relief. *Retroactive relief compensates the plaintiff for a past violation of his legal rights.* This compensation usually takes the form of money damages. Because a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself, the State is the real, substantial party in interest with regard to a claim for retroactive relief, and thus is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants. In other words, since an official-capacity claim for retroactive relief is deemed to be against the State whose officers are the nominal defendants, the claim is barred by the Eleventh Amendment.

In contrast, *prospective relief merely compels the state officers' compliance with federal law in the future....* Thus, official-capacity claims for declaratory relief are not barred by the Eleventh Amendment, even if the officers' future compliance with federal law would have some "ancillary" effect upon the State treasury.

*Doe v. Wigginton,* 21 F.3d 733, 737 (6th Cir.1994) (emphasis added) (quotations and citations omitted). This distinction between mere compensatory relief for past violations (impermissible under *Young*) and future relief for ongoing or threatened violations (permissible under *Young*) has been repeatedly emphasized by the Supreme Court. For instance, in *Papasan v. Allain,* 478 U.S. 265, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986), the Court observed:

*Young's* applicability has been tailored to conform as precisely as possible to those specific situations in which it is necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to the supreme authority of the United States. Consequently, *Young* has been focused on cases in which a violation of federal law by a state official is ongoing[,] as opposed to cases in which federal law has been violated at one time or over a period of time in the past, as well as on cases in which the relief against the state official directly ends the violation of federal law[,] as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence or directly to meet third-party interests such as compensation....

Relief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred [by the Eleventh Amendment] even when the state official is the named defendant. This is true if the relief is expressly denominated as damages. It is also true if the relief is tantamount to an award of damages for a past violation of federal law, even though styled as something else. On the other hand, relief that serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on the state treasury.

*Id.* at 277–78, 106 S.Ct. at 2940. *See also Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985) ("Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law. But compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment").

Herein, Plaintiff requests three different types of relief: (1) a declaration that Defendants violated his rights (by failing to provide Plaintiff with a name-clearing hearing after allegedly making false, public allegations against him, in violation of the

Fourteenth Amendment (Claim 1), by failing to follow the WSU handbook procedures for removing and/or suspending tenured faculty, in violation of the Fourteenth Amendment (Claim 2), by removing the trappings of his tenure pre-detenurization, in violation of the First and Fourteenth Amendments (Claim 3) and by prematurely terminating his employment without due process (Claim 4)), (2) an injunction awarding Plaintiff back pay (Claim 1) and (3) an injunction awarding Plaintiff reinstatement to the position of Dean and providing a name-clearing hearing to erase the stigma Plaintiff alleges to have endured at the time of his removal (Claim 1). The Court analyzes each type of relief with respect to the Eleventh Amendment, in turn.

### 1. *Declaratory Relief*

■ Although a request for a declaration that past official acts were illegal does not directly seek monetary relief (which, as explained *supra*, is in clear violation of the Eleventh Amendment), such a request, if it is clearly an indirect means of seeking retroactive monetary relief, is barred by the Eleventh Amendment, nonetheless. The Supreme Court dealt with such an attempt in *Green v. Mansour*, 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985). In that case, the Court explained that:

> There is a dispute about the lawfulness of [a state official's] past actions, but the Eleventh Amendment would prohibit the award of money damages ... if that dispute were resolved in favor of [the plaintiffs]. We think that the award of a declaratory judgment in this situation would be useful in resolving the dispute over the past lawfulness of respondent's action only if it might be offered in state-court proceedings as res judicata on the issue of liability, leaving to the state courts only a form of accounting proceeding whereby damages or restitution would be computed. But the issuance of a declaratory judgment in these

circumstances would have much the same effect as a full-fledged award of damages or restitution by the federal court, the latter kinds of relief being of course prohibited by the Eleventh Amendment. [Prior decisions of this Court demonstrate] that a declaratory judgment is not available when the result would be a partial "end run" around our decision in *Edelman v. Jordan.*

*Id.* at 73, 106 S.Ct. at 428 (citations omitted).

■ Plaintiff seeks a declaration that Defendants violated his rights in the past by failing to provide a name-clearing hearing upon his removal as Dean, by failing follow the WSU handbook detenurization procedures, by removing the trappings of his tenure pre-detenurization and by prematurely terminating his employment without due process. Furthermore, in his Response to Defendants' Motion for Summary Judgment, Plaintiff admits that he seeks to do exactly that which is prohibited by *Green v. Mansour:*

> It is Plaintiff's intention to offensively use this court's declaration in the [Ohio] Court of Claims as res judicata to the issues actually litigated, leaving the Court of Claims only a "form of accounting proceeding whereby damages or restitution would be computed." [*Green v. Mansour*, 474 U.S. at 73, 106 S.Ct. at 428.] The Plaintiff would argue that the statute of limitations in the Court of Claims has been equitably tolled during the pendency of this proceeding, leaving the Plaintiff only to file his action armed with the Court's declaration that at least his Due Process and First Amendment rights were violated.

Doc. # 58 at 13. However, even given Plaintiff's admission that he seeks declaratory relief for a purpose that is expressly foreclosed by the Supreme Court's interpretation of the Eleventh Amendment, not *all* of his claims for declaratory relief are

foreclosed. Specifically, the resolution of Claim 1, which is a request for a declaration that Defendants violated his rights by failing to provide him a name-clearing hearing, would be a component of the resolution of his request for injunctive relief directing Defendants to provide him with such a name-clearing hearing. Accordingly, the sole purpose of determining whether Defendants did, in fact, violate his rights by allegedly not providing him with a name-clearing hearing would not be to do an "end run" around the Supreme Court's decision in *Edelman.*[4] The remaining three bases for declaratory relief, however, are, per Plaintiff's own admission, barred by the Eleventh Amendment.[5] To the extent that such a bar deprives the Court of jurisdiction to hear said claims for declaratory relief, they are dismissed, with prejudice to a new action in this Court.

## 2. Back Pay

 Insisting that he was wrongfully removed from his position as Dean without a name-clearing hearing, Plaintiff also seeks back pay from the date of his removal. However, suits against a state for retroactive compensatory relief, such as back pay, are barred by the Eleventh Amendment. *See Edelman,* 415 U.S. at 677, 94 S.Ct. at 1362. To be sure, in his Response to Defendants' Motion for Summary Judgment, Plaintiff "agrees that money damages would be foreclosed by the Eleventh Amendment" (Doc. # 58 at 12). Accordingly, Plaintiff's claim for back pay must be dismissed.

---

**4.** *But see infra,* holding that Plaintiff is indeed not entitled to a name-clearing hearing.

**5.** At first glance, it may appear that Plaintiff's fourth basis for declaratory relief (that he allegedly was terminated without due process), like the first basis for declaratory relief, is related to a request for injunctive relief, to wit: Plaintiff's request that the Court order that he be reinstated. However, those two arguments are, in fact, not related. Specifi-

## 3. Name–Clearing Hearing and Reinstatement

Plaintiff also asks the Court to order that Defendants provide him with a name-clearing hearing "to erase the stigma that attached at the time his removal as Dean was effective" as well as reinstatement to the position of Dean (Compl.).

Defendants argue that Plaintiff's request for reinstatement is barred by the Eleventh Amendment because, they insist, it would constitute retroactive relief. In support, they rely on this Court's decision in *Dvorak v. Wright State Univ.,* 1997 WL 1764779 (S.D.Ohio Sept. 3, 1997). In *Dvorak,* the plaintiff was an assistant professor who had been denied tenure and promotion to associate professor by a vote of the university committee responsible for such decisions. Like Plaintiff herein, Dvorak alleged that the university had violated her First and Fourteenth Amendment rights and sued for, *inter alia,* reinstatement as an associate professor with tenure. In holding that her suit was barred by the Eleventh Amendment, the Court concluded that her requested reinstatement, which would effectively have granted her both promotion and tenure, was "apparently compensatory in nature and would [have], at most, serve[d] only indirectly to 'encourage compliance with federal law through deterrence,' instead of directly 'end[ing] the violation of federal law,' [and therefore that it was] retroactive

---

cally, as explained *infra,* Plaintiff's request for injunctive relief of reinstatement is based upon the alleged failure of Defendants to provide Plaintiff with a name-clearing hearing, whereas the basis for Plaintiff's request for a declaration that he was terminated without due process is based on an argument that Defendants allegedly failed to follow administrative policies and procedures established by WSU.

rather than prospective." *Id.* at *11, *quoting Papasan v. Allain,* 478 U.S. at 278, 106 S.Ct. at 2940.

If the reinstatement requested herein by Plaintiff sought an effective promotion of the sort sought by the plaintiff in *Dvorak,* the Court would be inclined to agree with Defendants that Plaintiff's claim would be barred by the Eleventh Amendment. However, Plaintiff herein is not seeking, as Dvorak was, reinstatement to a position that he had not previously held. Instead, he seeks reinstatement to the position of Dean—a position he held until he was removed, allegedly in violation of his constitutional rights. In fact, the Sixth Circuit has explicitly held that "claims for reinstatement are prospective in nature and appropriate subjects for *Ex parte Young* actions." *Carten v. Kent State University,* 282 F.3d 391, 396 (6th Cir.2002), *citing Turker v. Ohio Dep't. of Rehab. and Corrs.,* 157 F.3d 453, 459 (6th Cir.1998). *See also Dwyer v. Regan,* 777 F.2d 825, 836 (2d Cir.1985) ("Reinstatement is purely prospective injunctive relief . . . [A]n order that reinstatement be granted . . . is the sort of prospective relief that is not barred by the Eleventh Amendment."). Accordingly, Plaintiff's claim for reinstatement is not barred by the Eleventh Amendment.

Nor is Plaintiff's accompanying claim, which requests a name-clearing hearing, barred by the Eleventh Amendment. As the Sixth Circuit has observed, the "bottom line" of analysis under the Eleventh Amendment is a determination of "whether the suit would 'impose a liability which must be paid from public funds in the state treasury.' Prospective relief which has an incidental or ancillary effect on the state treasury will be allowed." *Thomson v. Harmony,* 65 F.3d 1314, 1320 (6th Cir. 1995), *cert. denied,* 517 U.S. 1105, 116 S.Ct. 1321, 134 L.Ed.2d 473 (1996), *quoting Edelman,* 415 U.S. at 663, 668, 94 S.Ct. at

1356, 1358 (footnote omitted). Ordering that Defendants provide Plaintiff with a name-clearing hearing would, at most, have only an incidental or ancillary effect on the state treasury. Accordingly, Plaintiff's request for a name-clearing hearing is not barred by the Eleventh Amendment.

In sum, Claim 2 (seeking a declaration that Defendants violated Plaintiff's constitutional rights by failing to follow WSU's handbook detenurization procedures), Claim 3 (seeking a declaration that Defendants violated Plaintiff's constitutional rights by removing the trappings of his tenure pre-detenurization) and Claim 4 (seeking a declaration that Defendants violated Plaintiff's constitutional rights by prematurely terminating him without due process) are dismissed because the Eleventh Amendment bars this Court from hearing them.

B. *Merits of Plaintiff's Claims for Name–Clearing Hearing and Reinstatement (Part of Claim 1)*

Having concluded that Plaintiff's claims for reinstatement and for a name-clearing hearing are not barred by the Eleventh Amendment, the Court now addresses those claims on their merits with respect to Defendants' motion for summary judgment. For the reasons that follow, summary judgment is proper with respect to both. The Court begins by analyzing Plaintiff's claim that Defendants' failure to give him a name-clearing hearing deprived him of his due process rights.

The Fourteenth Amendment forbids state actors from depriving individuals of life, liberty or property without due process of law. *See Mertik v. Blalock,* 983 F.2d 1353, 1359 (6th Cir.1993); *see also Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 569–70, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Joelson v. United States,* 86 F.3d 1413, 1420 (6th Cir.1996) ("To sustain a procedural due process

claim, a plaintiff must first demonstrate the existence of a protected liberty or property interest."). Except in exceptional circumstances, not applicable here, before a person is deprived of either a liberty or property interest, he has a right to some kind of hearing. *Roth*, 408 U.S. at 570 n. 7, 92 S.Ct. 2701, 33 L.Ed.2d 548. "[A] person's reputation, good name, honor, and integrity are among the liberty interests protected by the due process clause of the fourteenth amendment." *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir.1989).[6] However, defamation alone is not enough to invoke due process concerns. *Paul v. Davis*, 424 U.S. 693, 711, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Some alteration of a right or status "previously recognized by state law," such as employment, must accompany the damage to reputation. *Id.* at 711–12, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405; *see also Ferencz v. Hairston*, 119 F.3d 1244, 1249 (6th Cir.1997) (holding that, as publication of defamatory comments complained of was not accompanied by the deprivation of any tangible interest such as continued employment, the publication did not deprive plaintiffs of a liberty interest); *Mertik*, 983 F.2d at 1361 (explaining that, when a plaintiff alleges "loss, infringement or denial of a government benefit previously enjoyed ... coupled with communications by government officials, having a stigmatizing effect, a claim for deprivation of liberty without due process of law will lie"). Consequently, when a "nontenured employee shows that he has been stigmatized by the voluntary, public dissemination of false information in the course of a decision to terminate his employment, the employer is required to afford him an opportunity to clear his name."[7] *Chilingirian*, 882 F.2d at 205; *see also Roth*, 408 U.S. at 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (explaining that "where a person's good name, reputation, honor or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential"); *Christian v. Belcher*, 888 F.2d 410, 417 (6th Cir.1989) (explaining that due process concerns are implicated where public employer voluntarily disseminates false information in the course of a decision to terminate an employee). A name-clearing hearing is required only if the employer creates a false and defamatory impression about a particular employee in connection with his termination. *Id.*

The Sixth Circuit has identified five factors that a plaintiff must show in order to establish that he was deprived of a liberty interest and entitled to a name-clearing hearing.

First, the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment.... Second, a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance.... Third, the stigmatizing statements or charges must be made public. Fourth, the plaintiff must claim that the charges made against him were false. Lastly, the public dissemination must have been voluntary.

6. Because Plaintiff's allegation that Defendants' failure to afford him a name-clearing hearing implicates a liberty interest and not a property interest, the Court addresses the present claim only according to the former. The Court offers no opinion as to any alleged deprivation of Plaintiff's property interest in the trappings of his tenure. That issue is implicated by Claim 3, which the Court dismissed, *supra*, because it is barred by the Eleventh Amendment.

7. Although Plaintiff did hold a tenured professorship with WSU, his removal as professor is not the basis for his request for a name-clearing hearing. Instead, it is his removal as Dean, a position for which there was no tenure protection.

*Quinn v. Shirey,* 293 F.3d 315, 320 (6th Cir.) (citations omitted), *cert. denied,* 537 U.S. 1019, 123 S.Ct. 538, 154 L.Ed.2d 426 (2002).

When this Court sustained in part and overruled in part Defendants' motion to dismiss Plaintiff's First Amended Complaint, it noted three decisions from the Sixth Circuit relevant to the facts of this case:

In *Garvie v. Jackson,* 845 F.2d 647, 652 (6th Cir.1988), the Sixth Circuit held that a tenured college professor who had been removed as a Dean of the College of Liberal Arts, but continued to be employed as a tenured professor, did not have a "clearly established" liberty right to protecting his reputation even though he claimed that he had been defamed, as "an individual has no constitutionally protected interest in reputation alone." Although *Garvie* considered only whether such a liberty right was "clearly established," the Sixth Circuit subsequently held that where a tenured professor was removed as department head but was unable to show any harm or prejudice because his status as a tenured professor was unaffected, he did not have a liberty interest based on harm to reputation. *Chauhan v. Baker,* No. 87–3809, 1988 WL 137332, at *2 (6th Cir. 1988). To reach this holding, the Sixth Circuit expressly relied on a previous decision which had held that employees only possess a protected property or liberty interest where there is "a substantial, tangible harm and a material change to an employee's status ... [plaintiff must allege that defendants] took [ ] steps that significantly and materially impaired plaintiff's agreed employment status." *Samad v. Jenkins,* 845 F.2d 660, 662 (6th Cir.1988). In

*Chauhan,* the Sixth Circuit set forth this requirement and then concluded that this showing was not met by the plaintiff.

Doc. # 20 at 8–9. Since that time, the Sixth Circuit has interpreted an employee's liberty interest even more strictly by concluding that nothing short of termination constitutes a constitutional violation: "We ... hold that where a state employee was not terminated incident to the unfavorable statement, there was no violation of the liberty interest protected by the Due Process Clauses." *Lisle v. Metro. Gov't of Nashville and Davidson County, Tenn.,* 2003 WL 21580642 at *6 (6th Cir. July 9, 2003). *See also Siegert v. Gilley,* 500 U.S. 226, 233–34, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) ("The facts alleged by [plaintiff] cannot ... be held to state a claim for denial of a constitutional right [because] [t]he alleged defamation was not uttered incident to the termination of [plaintiff's] employment."); *Ludwig v. Bd. of Trs.,* 123 F.3d 404, 409 (6th Cir. 1997), *citing Paul,* 424 U.S. at 709–10, 96 S.Ct. at 1164–65 ("A liberty interest in one's reputation is implicated ... only when ... the stigmatizing statements [are] made in conjunction with the plaintiff's termination from employment.").

 Citing only this Court's prior decision, Plaintiff argues that his banishment to the basement of the WSU Kettering Center and the prohibition of professional contact with the College faculty or staff amounted to substantial, tangible harm (Doc. # 58 at 8). However, because Plaintiff was not terminated from his employment, he has no claim to a deprivation of his liberty interest. Accordingly, summary judgment is proper with respect to his claim requesting an order that Defendants provide him with a name-clearing hearing.[8]

---

8. Because the fact that Plaintiff was not ter- minated makes it impossible for him to pre-

Finally, summary judgment is also proper with respect to Plaintiff's claim for reinstatement. As Defendants note (Doc # 55 at 22), it is apparent that Plaintiff's request for reinstatement is based upon the fact that he was denied (wrongfully, in his view) a name-clearing hearing, as opposed to his removal as Dean. This is confirmed by the fact that the Complaint does not allege that Plaintiff was wrongfully removed as Dean, but only that he was wrongfully deprived of a name-clearing hearing incident to said removal. For the reasons explained *supra,* Plaintiff is not entitled to a name-clearing hearing. Accordingly, because his request for reinstatement is based upon his failure to receive a name-clearing hearing, said request for reinstatement must likewise fail.[9] Therefore, Plaintiff is not entitled to reinstatement and summary judgment is granted on this claim.

## IV. *Conclusion*

In conclusion, Claims 2, 3 and 4 must be dismissed because they seek retroactive declaratory relief in violation of the Elev-

enth Amendment. Similarly, Plaintiff's claim for back pay contained in Claim 1 must be dismissed because it seeks monetary damages from the State in violation of the Eleventh Amendment. Finally, although not barred by the Eleventh Amendment, Plaintiff presents no genuine issue of material fact as to the remaining components of Claim 1, to wit: whether he is entitled to a name-clearing hearing and reinstatement. Accordingly, Defendants' Motion for Summary Judgment, construed in part as a Motion for Lack of Subject Matter Jurisdiction Pursuant to Fed. R.Civ.P. 12(b)(1) (Doc. # 54), is sustained. Judgment will be entered in favor of Defendants and against Plaintiff.

The captioned cause is hereby terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

vail on his claim for a name-clearing hearing, the Court does not find it necessary to analyze his claim with respect to the five-factor test described *supra,* for determining whether he was deprived of a liberty interest via a denial of a name-clearing hearing.

**9.** Moreover, even if Plaintiff were entitled to a name-clearing hearing, dismissal of his claim for reinstatement would still be appropriate.

An employee's liberty interest in a name-clearing hearing is implicated only *after* he is terminated. *See Quinn,* 293 F.3d at 320, *quoting Baden v. Koch,* 799 F.2d 825, 830 (2d Cir.1986) ("In order to succeed on his liberty interest claim, [plaintiff] must also prove that [defendant] improperly refused to grant him a *post-removal* opportunity to refute the false charges that led to his removal") (emphasis added). To be sure, the Court noted exactly this in its prior decision, in which it stated: Although Plaintiff appears to seek this relief in connection with his asserted right to a

name-clearing hearing, this Court notes that the law does not require that such a hearing be granted *before* an employee is terminated; indeed, termination—or a material impairment to one's employment status—is a necessary prerequisite to the entitlement to a name-clearing hearing. Therefore, to the extent that Plaintiff would argue that he was entitled to such a hearing prior to his termination—and therefore should be reinstated as Dean and awarded back pay until he is provided with such a hearing—this Court would reject such an argument.
Doc. # 20 at 13. n. 5 (emphasis in original). At no point in his Response to Defendants' Motion for Summary Judgment does Plaintiff deny that his claim for reinstatement is based on his claim for a name-clearing hearing, nor does he refute the suggestion that such a basis must result in the dismissal of his claim for reinstatement. Accordingly, deprivation of a name-clearing hearing could not be the basis for Plaintiff to be reinstated.