NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0262n.06

**Nos. 10-5704, 10-5741**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| ROBERT LEWIS BAAR, | ) | **FILED** |
|  | ) | **Mar 07, 2012** |
| Plaintiff-Appellant Cross-Appellee, | ) | LEONARD GREEN, Clerk |
|  | ) |  |
| v. | ) | **ON APPEAL FROM THE UNITED** |
|  | ) | **STATES DISTRICT COURT FOR THE** |
| JEFFERSON COUNTY BOARD OF | ) | **WESTERN DISTRICT OF KENTUCKY** |
| EDUCATION; STEPHEN W. DAESCHNER; | ) |  |
| CAROLYN MEREDITH; MELISSA PAYNE; | ) |  |
| MARSHA DOHN; JAMES JURY, | ) | **O P I N I O N** |
|  | ) |  |
| Defendants-Appellees Cross-Appellants. | ) |  |

**BEFORE: COOK, WHITE, and DONALD, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** This is the second time this case is before us. On Robert Baar's first appeal, this court reversed the district court's grant of summary judgment to Defendants on his claim that Defendant Jefferson County Board of Education (JCBE) and the individual Defendants[1] violated the First Amendment by banning his attendance at meetings of a local club for chemistry teachers, the Louisville Area Chemistry Alliance (LACA), and affirmed the grant of summary judgment to Defendants on his remaining constitutional claims brought under 42 U.S.C. §§ 1983 and 1985. *Baar v. Jefferson Cnty. Bd. of Educ.*, 311 F. App'x 817 (6th Cir. 2009).

_____

[1]Defendant Daeschner is the former Superintendent of the Jefferson County Public Schools (JCPS), Meredith is JCPS' Director of Employee Relations, Dohn is the principal of Jeffersontown High School, Payne is a JCPS science teacher, and Jury is the principal of Ballard High School. *See Barr*, 686 F. Supp. 2d at 701.

Defendants then lifted the ban on Baar's attendance at LACA meetings. On remand, the district

court entered an order enjoining Defendants from prohibiting Baar's participation in LACA or

similar groups and, on Defendants' motion for summary judgment, dismissed Baar's official capacity

claims and held that the individual defendants were entitled to qualified immunity. *Baar v. Jefferson*

*Cnty. Bd. of Educ.*, 686 F. Supp. 2d 699 (W.D. Ky. 2010). The district court denied Defendants'

motion for costs and attorney fees and awarded Baar costs and attorney fees in an amount less than

requested. *Baar v. Jefferson Cnty. Bd. of Educ.*, No. 3:06-CV-75-H, 2010 WL 1949667 (W.D. Ky.

May 13, 2010).

In this second appeal, Baar challenges the district court's grant of qualified immunity to

Defendants Jury and Meredith, and dismissal of his official-capacity claims against Defendants

JCBE and Daeschner. Defendants cross-appeal the denial of their motion for costs and the award

of attorney fees and costs to Baar. We **AFFIRM** in all respects.

# I

The background is amply set forth in our decision in the first appeal:[2]

> On February 7, 2002, Baar, a public-school teacher in Jefferson County,
> Kentucky, sent a letter to one of his colleagues, Missy Payne, which spoke of
> increasing "danger" to Payne and her family. Payne had received several
> "inappropriate letters" from Baar before, JA 60, so she told the principal about this
> one. On February 8, after conferring with the Jefferson County Board of Education,
> the principal held a meeting with Baar, where Baar agreed to sign a "Memorandum
> of Understanding" requiring him "to discontinue communication in any form, verbal
> or written, with Missy Payne," JA 46. In June 2002, after further investigation, the
> principal issued a written reprimand to Baar for his repeated "inappropriate

---

[2]The broader procedural and factual background is set forth in the district court's opinion on remand and is not repeated here. *See Baar*, 686 F. Supp. 2d at 702-03.

communications" with Payne. JA 60. The reprimand informed Baar that he would be transferred to another school and reiterated that he should have "no further contact with Ms. Payne or her family." JA 60.

In response, Baar filed a grievance against the school board, which the board and the teachers' union eventually settled. While the settlement agreement required the board to remove the June 2002 written reprimand from Baar's personnel file, it said nothing about the February 2002 "Memorandum of Understanding." Baar soon began teaching at another Jefferson County high school.

For some time, it looked like the problem had been resolved. In September 2005, however, Baar sent Payne the following email: "Count me in for the LACA meeting on the 29th. I will bring the money for the dues to the meeting. Bob." JA 55. LACA stands for the "Louisville Area Chemistry Alliance," a professional organization of chemistry teachers that Baar co-founded, and one in which he actively participated from 1992 to 2001 but had no involvement after 2001. As Baar explained it, he sent the email because he wanted to attend an upcoming LACA meeting and because Payne was listed as the RSVP-contact person.

The email led to more discipline. In December 2005, the principal issued Baar a written reprimand, which: (1) disciplined him for violating the February 2002 "Memorandum of Understanding"; (2) instructed him not to communicate with Payne "in any form or fashion"; and (3) prohibited him from "represent [ing] ... the Jefferson County Public Schools at any [LACA] meeting." JA 50. The third restriction, the parties agree, permanently prohibits Baar from attending any future LACA meetings.

In February 2006, Baar filed this lawsuit in federal court against Payne, the Jefferson County Board of Education, the superintendent, two other school-board officials and two principals (all told, the "school board"). Seeking relief under 42 U.S.C. §§ 1983 and 1985, he claimed (as relevant here) that the school board had violated his . . . First Amendment rights.

*Baar*, 311 F. App'x at 819-20.

## II

We first address Baar's argument that Defendants waived the defense of qualified immunity by arguing it for the first time after his first appeal to this court. There is no dispute that Defendants pleaded qualified immunity as a defense in their answer to Baar's original complaint.

**A**

> [I]mmunity, whether qualified or absolute, is an affirmative defense which must be affirmatively pleaded . . . . [I]t follows that failure to do so can work a waiver of the defense. And since certain of the interests protected by the doctrines of immunity are conceptually distinct, and all of them are procedurally distinct, the failure to plead immunity may, at different stages of the litigation, work either a partial or complete waiver. Hence, we conceive it possible that one might assert immunity as an affirmative defense to the complaint and thus as an affirmative defense to ultimate liability without putting in issue his or her right to be free of subjection to trial or, before that, to the burdens of discovery.

*Kennedy v. City of Cleveland*, 797 F.2d 297, 300 (6th Cir. 1986). The defense is subject to the same procedural rules as other defenses," thus a district court has discretion to find a waiver of qualified immunity "if a defendant fails to assert the defense within time limits set by the court of if the court otherwise finds that a defendant has failed to exercise due diligence or has asserted the defense for dilatory purposes." *English v. Dyke*, 23 F.3d 1086, 1090 (6th Cir. 1994).

> Such a waiver, however, need not waive the defense for all purposes but would generally only waive the defense for the state at which the defense should have been asserted. Thus, for example, a defendant who fails to timely assert the defense prior to discovery may waive the right to avoid discovery but may nonetheless raise the issue after discovery on summary judgment or at trial.

*Id.*

**B**

The district court explained its conclusion that Defendants did not waive the defense of qualified immunity stating, inter alia:

> the Court must determine whether Defendants have waived the defense either by failing to assert it or by waiting too long to file a motion to dismiss on this ground. Immunity must be affirmatively pleaded, *English v. Dyke*, 23 F.3d 1086, 1090 (6th Cir.1994), and Defendants have done so [i]n their answer to the original complaint . . . Merely pleading the defense, however, may not end Defendants' responsibilities.

The complaint was filed in 2006; extensive discovery followed; summary judgment was granted; and then reversal [*sic* reversed] on appeal.  During this entire time, Defendants did not move for dismissal on the grounds of qualified immunity.  Only now have Defendants raised the defense by motion.  Thus, having obtained a judgment from the Sixth Circuit that his rights may have been violated, Plaintiff now faces a qualified immunity motion which will either bar his claim or further delay it through interlocutory appeal.  *See Mitchell v. Forsyth*, 472 U.S. 511, 530 [] (1985) (holding that the denial of a claim of qualified immunity is an appealable "final decision" within the meaning of 28 U.S.C.  1291).

The Sixth Circuit has not comprehensively addressed the circumstances under which defendants might actually waive their qualified immunity defense.  However, several Sixth Circuit panels have held generally that a "waiver" of qualified immunity at one stage of the litigation does not necessarily constitute a waiver for all future stages.  *English*, 23 F.3d at 1090 (citing *Kennedy v. City of Cleveland*, 797 F.2d 297, 300-01 (6th Cir. 1986)); *Abel v. Harp*, 278 Fed. Appx. 642, 648 (6th Cir. 2008) (finding that the defendant did not waive qualified immunity by failing to assert it in his pre-answer motion to dismiss that was granted and then asserting it for the first time on remand).  *See also Brown v. Crowley*, 312 F.3d 782 (6th Cir. 2002). . . . .

Our case originally contained multiple claims.  Qualified immunity may not have applied to all of them.  Defendants raised the defense in their answer but not in their first motion for summary judgment.  At this stage in the proceedings and after the first appeal, the issue is much narrower.  There is no reason to suspect that Defendants' motives were improper, and . . . the circumstances here are not unusual.  The Sixth Circuit appears to give broad latitude for defendants to raise qualified immunity even after dispositive motions and appeals have proceeded for some time.

Therefore, this Court concludes that Defendants may raise this defense by motion at this time.

*Baar*, 686 F. Supp. 2d at 706-707.

## C

Baar acknowledges that the district court was "probably correct" to hold that the Sixth Circuit appears to give broad latitude for defendants to raise qualified immunity even after dispositive motions and appeals have proceeded for some time, and cites no authority contrary to that applied

by the district court, but asserts that this case "would be a fit vehicle" for this court to join the several circuit courts that hold that failure to assert qualified immunity until after an appeal constitutes a waiver of the defense.

We conclude that the district court did not abuse its discretion by permitting Defendants to assert the defense of qualified immunity after Baar's initial appeal to this court. *See Kennedy*, 797 F.2d at 300; *English*, 23 F.3d at 1090. Baar's amended complaint asserted numerous claims based on disputed facts. Defendants' answer to the original complaint asserted immunity as a defense. The district court properly noted that had Defendants raised the qualified-immunity defense earlier, it likely would not have applied to all Barr's claims. On remand to the district court following the first appeal, the issues were vastly narrowed and the facts largely uncontested. Baar does not assert that Defendants had improper motives in asserting the defense following the initial appeal to this court. In sum, Barr has not provided evidence that this is the unusual case where the district court should have deemed the defense waived. *See English*, 23 F.3d at 1090 n.1 ("Conceivably, a plaintiff may be so prejudiced by a defendant's failure to raise the defense, especially when the delay was intentional, that the trial court may decide the defense is completely waived.")

**III**

Baar next argues that this court in the first appeal determined that his First Amendment claim passed the *Pickering*[3] balancing test, that that determination is the law of the case, and that the district court was thus precluded on remand from reaching the issue of qualified immunity.

_____

[3]*Pickering v. Board of Education*, 391 U.S. 563 (1968).

**A**

A bit of background is necessary. The constitutionality of restrictions on government employee speech is determined under *Pickering v. Board of Education*, 391 U.S. 563 (1968). There, the Supreme Court recognized that "the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *Id.* at 568. Once a court determines that the employee's speech relates to a matter of public concern, the court must balance the employee's interests, as a citizen, in commenting on matters of public concern against the State's interest, as an employer, in promoting the efficiency of the public services it performs through its employees. *Id.*; *see also Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006).

Defendants argued in their first motion for summary judgment that Baar's attendance at LACA meetings was not constitutionally protected because it involved matters of personal interest, not public concern, and that even if it was constitutionally protected, JCBE's interests in maintaining an efficient and harmonious educational environment clearly outweighed Baar's interest in attending the meetings. R. 16 at 19-20. The district court granted Defendants' motion, finding as a matter of law that Baar's association with LACA did not involve matters of public concern. Thus, the district court found it unnecessary to apply *Pickering* balancing. *Baar*, 686 F. Supp. 2d at 703.

In the first appeal, this court determined that Baar's association with LACA did involve a matter of public concern, and concluded that "[a]t this stage of the case, the claim . . . satisfies *Pickering* balancing:"

*Prohibition on Baar attending any future LACA meetings*. The school board's ban on Baar's attendance at all future LACA meetings . . . [is] a direct restriction not on what Baar can say but on whom he can associate with-and apparently for all time. Although the same framework governs freedom-of-association and free-speech claims, see *Akers*, 352 F.3d at 1036; *Boals v. Gray*, 775 F.2d 686, 692 (6th Cir.1985), the breadth and timeless nature of this restriction permits Baar to take this claim to a jury.

Baar's association with LACA involves a matter of public concern. LACA is "an independent group of science teachers from private schools, public schools, [and] parochial schools," JA 202, and its stated goal is the improvement of science education in the schools, something that is "a subject of general interest and of value and concern to the public at the time of publication." *City of San Diego*, 543 U.S. at 84, 125 S.Ct. 521; *see also Leary v. Daeschner (Leary I)*, 228 F.3d 729, 737 (6th Cir.2000) ("The subject [ ] of ... the appropriate educational program to be implemented [is] undoubtedly [a] matter[ ] of concern to the community at large."). The services provided by LACA-holding professional-development classes, developing safety protocols for in-classroom lab experiments and providing a forum to discuss the science curriculum, textbooks, lesson plans, effective teaching techniques and ways to improve science education-have value not only to chemistry teachers (such as Baar) but to the general public as well.

It may be true, as the school board points out, that LACA is not devoted to criticizing the school board's implementation of the science curriculum or to bringing to light official wrongdoing. But while speech that attacks policy decisions or that exposes public malfeasance represent quintessential "examples of speech that would involve matters of public concern," *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 182 (6th Cir.2008), they do not make up the universe of protected speech. Also included is speech on "issues of community importance," *Leary II*, 349 F.3d at 900, that can "be fairly considered as relating to [a] matter of political, social or other concern to the community," *Connick*, 461 U.S. at 146, 103 S.Ct. 1684.

At this stage of the case, the claim also satisfies *Pickering* balancing. Baar has a substantial interest in participating in LACA, a group he cofounded, one he regularly attended in the past and one designed for the professional development of chemistry teachers like him. The organization provides an opportunity for Baar to network with other chemistry teachers, to learn how he can do his job more effectively and to change science education for the better.

The school board, we appreciate, also has a substantial interest in curbing Baar's improper communications with Payne, which ran the risk of compromising

the school board's ability to deliver a valuable education in an harassment-free work environment. What tips the balance in Baar's favor is the breadth of the school board's prohibition. The December 2005 directive prohibits Baar from attending any LACA meeting for all time, no matter the purpose of the meeting, no matter whether Baar plans to talk to Payne there, no matter indeed whether Payne plans to attend the meeting or for that matter remains a teacher in the Louisville area. Nothing about Baar's past problems concerns his association with LACA. It is Baar's communications with Payne, not Baar's association with LACA, that threaten to "undermine a legitimate goal or mission" of the school board or "create disharmony among co-workers." *Rodgers v. Banks*, 344 F.3d 587, 601 (6th Cir.2003) (internal quotation marks omitted).

No doubt, a prohibition on Baar's involvement with LACA is one way to prevent Baar from communicating with Payne, but it is not the only way and it is not a way that comports with *Pickering*'s admonishment that public employers must balance their own interests with the First Amendment rights of their employees. Because the school board bears the burden of justifying broader restrictions on speech with ever-stronger State interests and because the school board has given no tenable explanation for such a sweeping and everlasting prohibition, it is not entitled to summary judgment on this claim. *See NTEU*, 513 U.S. at 466-68, 115 S. Ct. 1003; *Nat'l Treasury Employees Union v. United States*, 3 F.3d 1555, 1566 (D.C. Cir.1993) (Silberman, J., dissenting from denial of rehearing en banc) ("The breadth, as well as the weight, of the governmental restriction is of course relevant to the *Pickering* analysis. When the government burdens substantially more speech than required by its asserted interest, then its asserted interest might not outweigh that greater burden. After all, the greater the burden on speech, *ceteris paribus*, the more the *Pickering* balance will point toward invalidation of the rule.") (internal quotation marks omitted).

*Baar*, 311 F. App'x at 822-23.

**B**

We agree that the determination that Baar's claim satisfies the *Pickering* test is the law of the case. As is evident from this court's opinion in the first appeal, however, qualified immunity was not at issue in the first appeal. And, the inquiry whether a government official is entitled to qualified immunity differs from the inquiry whether a plaintiff's right to freedom of association was violated

(the *Pickering* question). Both inquiries look to whether a constitutionally protected right was violated, but the qualified-immunity inquiry has an additional requirement – that the court determine whether that constitutional right was clearly established at the pertinent time such that a reasonable official would have understood that his behavior violated that right. *Shehee v. Luttrell*, 199 F.3d 295, 299-300 (6th Cir. 1999). As the district court observed on remand, this court's determination in the first appeal that "[a]t this stage of the case, the claim . . . satisfies *Pickering* balancing," is not the same as deciding a motion for summary judgment brought on grounds of qualified immunity. *Baar*, 686 F. Supp. 2d at 712.

Because qualified immunity was not at issue in the first appeal, this court did not address whether, given the state of the law at the time, a reasonable official would have known that his behavior violated Baar's First Amendment rights. The district court was thus not precluded from considering the issue of qualified immunity on remand.

## C

Baar next contends that although in some cases application of the *Pickering* test to determine if defendants are entitled to qualified immunity will present a different issue and yield a different result than application of the *Pickering* test to determine if a constitutional violation has occurred, this is not such a case. Baar relies on *Williams v. Kennedy*, 24 F.3d 1526 (6th Cir. 1994),[4] and *Stern*

_____

[4]In *Williams*, the plaintiff, a field office manager who supervised 30 employees for Kentucky's Cabinet of Human Resources' Department for Employment Services (DES), was demoted for criticizing hiring and promotion practices tied to political patronage. The plaintiff alleged that superiors told her and other DES office managers that they were expected to hire and promote the "Governor's people" for positions under their supervision and that failure to cooperate would result in "serious consequences." 24 F.3d at 1530. The district court denied the defendants'

*v. Shouldice*, 706 F.2d 742 (6th Cir. 1985),[5] in which the application of *Pickering* demonstrated that the plaintiffs' activities were protected not only for the purpose of determining whether a constitutional violation had occurred, but also for the purpose of determining whether the defendants were entitled to qualified immunity.

To be sure, application of the *Pickering* test informed the qualified immunity inquiry in these cases. However, neither case suggests that the last step of the immunity inquiry, i.e., determining whether the law was clearly established such that the defendants would have known that the plaintiff's interests in speaking or associating on the matter of public concern outweighed the government's interests in efficiency, may be dispensed with if the court finds a violation of a plaintiff's First Amendment rights.

---

motion for summary judgment brought on grounds of qualified immunity. *Id*. at 1532. This court affirmed, concluding that the plaintiff's statements regarded matters of public concern, and "that the contours of the public employee's right to be free from adverse employment action on the basis of protected speech were sufficiently clear in May 1990 and May 1991 (the time of Williams' removal and demotion) that a reasonable official would understand that taking such action on the basis of statements that were critical of political patronage employment practices . . . and other politically corrupt activities would violate that right." *Williams*, 24 F.3d at 1536-37.

[5]In *Stern*, this court applied *Pickering* and found that the plaintiff, a college professor who claimed that he was denied tenure in retaliation for exercising First Amendment rights, had engaged in protected speech when he advised a student whom the college had suspended to seek legal advice, and that the district court should have decided that question in the first instance rather than submit it to the jury. 706 F.2d at 747-48. The defendants argued that even if the plaintiff's speech merited First Amendment protection, they were entitled to qualified immunity because the law in this area was developing in the early 1970s and they did not violate a clearly established constitutional right. *Id.* at 749. Having discussed earlier in the opinion that the record was devoid of evidence that the plaintiff's counseling adversely affected the College, *id.* at 748, this court determined that a reasonable person should have known in 1970-71 that the plaintiff's speech was constitutionally protected under *Pickering* and thus concluded that the individual defendants were not entitled to immunity. *Id.* at 749.

Continuing his argument, Barr addresses this controlling inquiry, asserting that it should be obvious to any reasonable public official that a sweeping and everlasting prohibition on a teacher's constitutionally protected association with a club of science teachers would not pass constitutional muster, and that "[t]his is a case where the obvious and odious nature of the Defendants' violation of [his] right of association entitled him to prevail without regard to the imprecision of *Pickering* balancing standards."[6] Barr cites the following language in *Williams*:

> Defendants argue that because particularized balancing is necessary under *Pickering* and its progeny, they are entitled to qualified immunity because the contours of a public employee's free speech rights are unclear. *See Benson v. Allphin*, 786 F.2d 268, 276 (7th Cir.), *cert. denied*, 479 U.S. 848 [] (1986). Defendants also cite our statement in *Meyers v. City of Cincinnati*, 934 F.2d 726, 729 (6th Cir. 1991), referring to the *Pickering* balancing test as a "somewhat imprecise standard." We agree that in many public employee free speech cases it would be unclear to a reasonable official what the outcome of the balancing inquiry should be. However, the instant case presents a situation where the employee has spoken out on matters of great public concern, and these statements apparently had only minimal effect on the efficiency of the office. In other words, this is not a case where the imprecision of the standard makes a difference.

*Williams*, 24 F.3d at 1537. The defendants in *Stern* similarly argued that because *Pickering* "required courts to balance various factors . . . , no person could reasonably predict in a given situation whether discharging an employee would violate the latter's first amendment rights." *Stern*, 706 F.2d at 749.

Baar's argument is not persuasive. *Williams* stands for the proposition that the inherent imprecision of the *Pickering* test itself does not support a finding of qualified immunity but it recognizes that its application is fact specific. Granted, the district court in the instant case discussed

---

[6]Pl.'s Br. at 22.

"the inherent difficulty in deciding whether a reasonable person would ever know where the *Pickering* balancing test would eventually fall in these circumstances," 686 F. Supp. 2d at 710, but it did not conclude that Meredith and Jury were entitled to qualified immunity simply because the outcome of *Pickering* balancing is difficult to predict. Instead, the district court observed that "the mere existence of a balancing test does not entitle defendants to qualified immunity," and proceeded to analyze pre-2005 cases in order to determine whether the law was so clearly established at that time such that Meredith and Jury would have known that prohibiting Baar's attendance at LACA meetings violated the First Amendment, 686 F. Supp. 2d at 712, as is required of courts when qualified-immunity is at issue. *See Guercio v. Brody*, 911 F.2d 1179, 1183 (6th Cir. 1990) (The qualified-immunity inquiry requires the district court "to determine whether the law was so clearly established at the time of the incident that a reasonably competent public official should have known that a course of action would be inconsistent with a public employee's rights as defined in *Pickering*."). Baar's arguments thus fail.

## IV

Baar maintains that even if this court's prior decision did not decide the qualified immunity issue, Defendants Jury and Meredith were not entitled to qualified immunity in any event. Defendants assert that the district court correctly dismissed the claims against Jury and Meredith in their individual capacities on qualified immunity grounds because no reasonable school official could have understood 1) that Baar had a constitutionally protected right to attend LACA meetings, and 2) that preventing Baar from attending LACA meetings would trump JCBE's interest in assisting Payne.

-13-

**A**

We review de novo the district court's grant of summary judgment, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *In re Calumet Farm, Inc.*, 398 F.3d 555, 558 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The district court's determination regarding qualified immunity is also reviewed de novo. *Williams v. Commonwealth of Ky.*, 24 F.3d 1526, 1533 (6th Cir. 1994).

Under the judicially-created exception of qualified immunity, government officials performing discretionary functions[7] "are immune from civil liability when acting in an official capacity if their actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Shehee*, 199 F.3d at 299-300.

> The focus in determining whether an official is entitled to qualified immunity is on the objective legal reasonableness of the official's actions in light of clearly established law. *Harlow* [*v. Fitzgerald*], 457 U.S. [800,] 818 [(1982)]. An allegation of malice will not alone defeat an official's claim to immunity. *Malley v. Briggs*, 475

---

[7]Baar does not contest the district court's determination that Jury and Meredith were engaged in a discretionary function:

> When developing the 2005 reprimand, Jury and Meredith did not follow any simple procedure or standard punishment policy. Rather, they crafted a remedy for unusual circumstances. Courts routinely hold that such actions constitute the type of discretionary governmental function to which qualified immunity may apply. *See, e.g., McCullough v. Wyandanch Union Free School District*, 187 F.3d 272 (2d Cir.1999) (applying qualified immunity where a teacher was terminated in violation of his free speech rights); *Lytle v. Wondrash*, 182 F.3d 1083 (9th Cir.1999) (applying qualified immunity where teacher was terminated for his negative statements about the school district). By this same logic, the actions of Jury and Meredith are clearly discretionary governmental functions.

> U.S. 335, 341 [] (1986) . . . . We should focus on whether, at the time defendants acted, the rights asserted were clearly established by decisions of the Supreme Court or the courts of this federal circuit. . . . . It is not determinative that the plaintiff has asserted the violation of a broadly stated general right . . . .

*Garvie v. Jackson*, 845 F.2d 647, 649-50 (some internal citations omitted). It is for the district court "to determine whether the law was so clearly established at the time of the incident that a reasonably competent public official should have known that a course of action would be inconsistent with a public employee's rights as defined in *Pickering*." *Guercio*, 911 F.2d at 1183. Where public employers move for summary judgment on the basis of qualified immunity, the issue is whether reasonably competent officials could disagree on whether the plaintiff's speech or association was protected by the First Amendment. *Malley v. Briggs* , 475 U.S. 335, 341(1986) ("The standard to be applied in resolving the 'clearly established law' predicate within the *Harlow* touchstone of 'objective legal reasonableness' is defined in *Malley v. Briggs* with clarity: "if officers of reasonable competence could disagree on this issue, immunity should be recognized.'") ; *Guercio*, 911 F.2d at 1185-86 (citing *Malley*, 475 U.S. at 341); *Florio v. Skorepa*, 961 F.2d 1577 (6th Cir. 1992) (table disposition).

**B**

The inquiry governing here is whether the law was clearly established such that the defendants would have known at the time of Baar's 2005 reprimand: 1) that Baar's association with LACA involved a matter of public concern, and 2) that his interests in associating on the matter of public concern outweighed JCBE's interests in efficiency. *Garvie v. Jackson*, 845 F.2d 647, 651 (6th Cir. 1988); *see also Habel v. Twp. of Macomb*, 258 F. App'x 854, 858-59 (6th Cir. 2007). If

reasonable officials could have disagreed on either issue the defendants are entitled to qualified immunity. *Garvie*, 845 F.2d at 651.

On remand, the district court determined that given the state of the law at the time of Baar's 2005 reprimand, reasonable officials could have disagreed on the issue whether Baar's interests outweighed JCBE's, and that Defendants were thus entitled to qualified immunity. 686 F. Supp. 2d at 710-12. The district court's determination whether reasonable officials would have known that Baar's association with LACA *involved a matter of public concern* is less clear. Baar asserts that the district court held that Baar's right to associate with LACA was not only a matter of public concern, but that it constituted a clearly established constitutional right of which a reasonable public official would know. Defendants argue, more broadly, that the court expressly found that Baar did not have a clearly established right to attend LACA meetings. Defendants are correct, as the district court stated at the end of its qualified-immunity discussion: "The Court respectfully finds no pre-existing Sixth Circuit or Supreme Court precedent that clearly established Plaintiff's rights such that a reasonable official in similar circumstances would have known that prohibiting Plaintiff's attendance at the LACA meetings violated Plaintiff's constitutional rights." 686 F. Supp. 2d at 713.

## C

Baar argues that the district court interpreted this court's "tipping" language, *see Barr*, 311 F. App'x at 823 ("At this stage of the case, the claim also satisfies *Pickering* balancing. Baar has a substantial interest in participating in LACA . . . The school board . . . also has a substantial interest in curbing Baar's improper communications with Payne, which ran the risk of compromising the school board's ability to deliver a valuable education in an harassment-free work environment. What

-16-

tips the balance in Baar's favor is the breadth of the school board's prohibition.") as meaning a bare

tipping, rather than as a "veritable elephant in Constitutional jurisprudence." He contends that the

court interpreted the facts that militated toward qualified immunity in a light most favorable to Jury

and Meredith, thus violating the principle that *Pickering* balancing be objective. He asserts that the

district court discounted the fact that he had no communication with Payne for the 3 1/2 years before

his email to her of September 2005, that the email was completely innocent, that both he and Payne

no longer worked at the same school, and that he "apparently attended the September, 2005 LACA

meeting without generating any complaint from Payne." Baar maintains that had the district court

considered these facts, it would have been unable to conclude that his future attendance at LACA

meetings would in any manner adversely affect JCBE's interests in efficiency and harmony in the

workplace. He also argues that his refusal to agree not to attend the September 2005 LACA meeting

did not weigh in Jury and Meredith's favor on the *Pickering* scale because they in fact did not

discipline him until several months after the meeting, at which time, Baar maintains, all was peaceful

between him and Payne.

The flaw in Baar's argument is that the district court discussed the weight of the parties'

respective interests insofar as necessary to its determination whether the state of the law at the time

of Baar's 2005 reprimand was such that Jury and Meredith would have known that they violated

Baar's First Amendment rights. The district court recognized that its task was to determine whether

Baar's rights were so clearly established that reasonable public officials could not differ on the

constitutionality of their conduct, and that it was not to determine the outcome of *Pickering*

balancing of the parties' interests. 686 F. Supp. 2d at 712. This is in keeping with established law:

[In *Pickering*,] the Supreme Court instructed that a public employee's interest in [association] on matters of public concern is protected by the first amendment only insofar as it is of greater weight than the employer's interest in 'promoting the efficiency of the public services it performs through its employees.' 391 U.S. at 568 []. Under this familiar rule of balance, the employee's rights to free [association] are qualified by the countervailing interests of his employer. When a *Pickering* claim is adjudicated on its merits, it is for the fact-finder, be it jury or court, to determine the relative weight of these potentially antithetical interests. In the qualified immunity context, by contrast, it is the responsibility of the court to determine if the law was so clearly established at the time of the incident that a reasonably competent public official should have known that a course of action would be inconsistent with a public employee's rights as defined in *Pickering*.

Accordingly, having in the first instance properly defined the 'clearly established by law' inquiry, this court must, in disposing of a qualified immunity motion, place the totality of the well-pleaded non-conclusory allegations of the complaint on the *Pickering* scale to balance a public employee's interest in commenting on matters of public concern against the employer's interest in 'promoting the efficiency of the public services it performs through its employees,' *id.* at 568 []. *Without concluding where that balance ultimately comes to rest – a decision reserved for the trier of fact –* this court must dispose of the motion to dismiss on the basis of qualified immunity pursuant to the dictates of *Harlow*, *Malley*, *Anderson*, *Garvie*, etc., by determining whether [the plaintiff's] rights under *Pickering*, as opposed to whether the general teachings of *Pickering*, were so clear at the time in question that reasonable minds could not differ on the constitutionality of her discharge.

*Guercio*, 911 F.2d at 1183-84 (emphasis added).

Here, the district court properly analyzed pre-2005 cases to determine whether the state of the law at that time was such that reasonable officials in Jury or Meredith's position would have known that Baar's interests outweighed Defendants', and determined that the cases did not provide clearly established guidance. *Baar*, 686 F. Supp. 2d at 710-12. Of necessity, the district court discussed the weight of the parties' respective interests in these cases in order to determine whether

the cases provided clear guidance to Meredith and Jury that their conduct violated Baar's First Amendment right.

We agree with the district court that reasonably competent officials could disagree on whether Baar's interest in attending LACA meetings "outweighed the school district's legitimate interests in prohibiting attendance," *Baar*, 686 F. Supp. 2d at 710, and that Meredith and Jury were thus entitled to qualified immunity.

## V

Baar asserts that the district court should not have dismissed his claims against JCBE and Superintendent Daeschner in their official capacities. He maintains that it was JCBE's policy, usage or custom to permit Meredith to conduct interminable investigations into alleged teacher wrongdoing and that she was also the final decision maker for the Board in the matter of Baar's 2005 discipline. Baar thus contends that JCBE and Daeschner are liable for Meredith's acts and the acts of her subordinate, Jury, and that Meredith (through Jury) was the JCBE's final policymaking authority.

## A

We review the district court's grant of summary judgment de novo. *In re Calumet Farm, Inc.*, 398 F.3d at 558 (6th Cir. 2005).

Having determined that JCBE received notice of this suit against its employees and itself, and responded, and that any judgment against the individual defendants in their official capacities would be a judgment against JCBE, the district court dismissed the official-capacity claims against the individual Defendants as duplicative of the claim against JCBE and unnecessary. *Baar*, 686 F. Supp. 2d at 703-04.

Baar does not challenge this particular ruling, and his argument as to the individual

Defendants is misplaced – it does not recognize that Daeschner, Meredith or Jury's decision-making

authority has nothing to do with the official-capacity claims against those individuals.

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of law. Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n.55 [] (1978). As long as the government entity receives notice and opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Brandon* [*v. Holt*], 469 U.S. [464,] 471-72 [(1985)]. It is *not* a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

*Kentucky v. Graham*, 473 U.S. at 165-66 (emphasis in original). This analysis has been echoed by

this court in *Smith v. Leis*, 407 F. App'x 918 (6th Cir. 2011), and cases cited therein:

> '[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent.' *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 [] (1985)). 'Official-capacity suits . . . represent only another way of pleading an action against an entity of which an officer is an agent.' *Monell v. Dep't of Soc. Servcs. New York City*, 436 U.S. 658, 690 n.55 [] (1978); *see also Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity.") As long as the governmental entity receives notice and an opportunity to respond, an official-capacity suit "imposes liability on the entity that he represents." *Brandon v. Holt*, 469 U.S. 464, 471-72 [] (1985).

*Leis*, 407 F. App'x at 927-28.

Relying on *Graham*, *Monnell*, and *Holt*, the district court properly concluded that "any

judgment against the individual defendants in their official capacities will, in reality, be a judgment

against JCBE and will only be collectible against JCBE." *Baar*, 686 F. Supp. 2d at 704.

The district court observed:

> The Sixth Circuit has never specifically decided whether district courts should actually dismiss official capacity claims where the local government is already a party. In the Eastern and Western Districts of Kentucky, however, the judges have adopted the practical approach of dismissing the official capacity claims. *See Clark v. Kentucky*, 229 F. Supp. 2d 718, 721-22 (E.D. Ky. 2002); *Meredith v. Jefferson County Bd. of Educ.*, No. 3:02-CV-620-H, 2007 WL 3342258, at *2 (W.D. Ky. Nov. 9, 2007). This Court believes this is the more logical approach. Thus the official capacity claims [against the individual defendants] will be dismissed.

*Baar*, 686 F. Supp. 2d at 704.

As discussed in section B below, the district court went on to determine that JCBE was not liable under § 1983 as a matter of law where there was no evidence that Superintendent Daeschner approved Jury's reprimand of Baar, and there was no evidence that the reprimand was pursuant to a JCBE custom or policy or that it was undertaken by a final decision-maker. *Id.* at 705-06. Had the district court addressed JCBE's liability first, and then addressed the official-capacity claims against the individual Defendants, it would have comported with several decisions of this court that approved the dismissal of official-capacity claims against individual defendants where the government entity is a party and the plaintiff fails to demonstrate that a policy or custom of the defendant government entity played a part in the violation. *See Petty v. Cnty. of Franklin, Oh.*, 478 F.3d 341, 344, 348-50 (6th Cir. 2007) (where district court dismissed official-capacity claim against individual defendant because plaintiff failed to present evidence that any county actors were deliberately indifferent to his medical needs, this court upheld the dismissal noting that "To the extent that Petty's suit is against [Sheriff] Karnes in his *official* capacity, it is nothing more than a suit against Franklin County itself," and that plaintiff failed to present evidence that County had

policy or custom that was moving force behind violation of his constitutional rights); *Rothhaupt v. Maiden*, 144 F. App'x 465, 471 (6th Cir. 2005) (where district court dismissed official-capacity claims against several individual defendants because plaintiff did not demonstrate they acted pursuant to municipal custom or exhibited deliberate indifference to his constitutional rights, this court affirmed, noting that official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent, and that to establish liability therefor, plaintiff must demonstrate the entity itself, through policy or custom, played a part in violation) .

Under these authorities and given that the district court (albeit after dismissing the official-capacity claims against the individuals) properly determined that JCBE was not liable as a matter of law, we find no error.

**B**

Remaining is Baar's argument that the district court improperly dismissed his claim against JCBE. We review the district court's grant of summary judgment de novo. *In re Calumet*, 398 F.3d at 558.

The district court properly relied on *Adkins v. Board of Education of Magoffin County, Kentucky*, 982 F.2d 952, 957-58 (6th Cir. 1993), where we explained :

> Since *Monnell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978), it has been established that local governing bodies are "persons" within the meaning of [42 U.S.C. § 1983]. While such a body is not liable under *responde[a]t superior* for an employee or officer's acts, it may be sued for having caused a constitutional tort through "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690 []. Since such bodies can act only through natural persons, the critical question is whether the person committing the act did so pursuant to official policy. A formally adopted

policy is not required: established usage or custom may be sufficient. *Id.* at 690-91 [].

. . . .

In [*City of St. Louis v.*] *Praprotnik*, [485 U.S. 112 (1988)], Justice O'Connor, writing for a plurality, emphasized the importance of determining, if possible, where state law places final policymaking authority. . . . *Id.* at 125 []. The opinion also stressed the necessity of identifying the official or officials responsible under state law for making policy in the particular area of the body's business involved in the act alleged to be unconstitutional. *Id.* at 123 [].

The district court held that JCBE cannot be liable as a matter of law because Jury and Meredith, the only individuals involved in Baar's reprimand, did not act pursuant to official policy and neither had final policymaking authority:

So far in this litigation, neither this Court nor the Sixth Circuit has had occasion to consider whether JCBE, either directly or through suit against an employee in her official capacity, could be liable to Plaintiff for violations of his constitutional rights. The Supreme Court has described the circumstances for such § 1983 liability in *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 [] (1978). A local governmental entity is considered a person within the meaning of § 1983, *Id.* at 662 []; it has no liability simply because its employee violates another's constitutional rights, *Id.* at 691 []; and it is liable only where the employee's act represents an official policy or custom of that government, *Id.* at 694 []. *See also Kentucky v. Graham*, 473 U.S. 159, 167 [] (1985). Since *Monell*, the Sixth Circuit has elaborated on the scope of municipal liability:

While [local governing bodies are] not liable under respondent [*sic*] superior for an employee or officer's acts, it may be sued for having caused a constitutional tort through "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Since such bodies can act only through natural persons, the critical question is whether the person committing the act did so pursuant to official policy. A formally adopted policy is not required; established usage or custom may be sufficient.

*Adkins v. Bd. of Educ. of Magoffin County, Ky.*, 982 F.2d 952, 957 (6th Cir.1993). Under this jurisprudence, the actions of a single official can also only create liability for the local government where that official has "final policymaking authority." *Id.*

"[W]hether an official has such final authority is a question of state law." *Id*. (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 [] (1988)).

In fact, the *Adkins* case is particularly instructive here. The Sixth Circuit confronted a superintendent's decision not to recommend a secretary for contract renewal because she would be working for her husband. The Circuit found that this action infringed upon the secretary's constitutional right to privacy in intimate relationships. Nevertheless, the school board itself was not liable for the superintendent's actions. First, it had no policy regarding the hiring of spouses. Under Kentucky state law, the school board itself made all final decisions relating to personnel hiring and firing. While it was true that the superintendent must recommend a candidate for the school board to consider the candidate, the Court nevertheless found that the school board, not the superintendent, had "final policymaking authority." *Id*. at 959. Therefore, the Court dismissed the claims against the school board, holding that they were not liable under *Monell*. *Id*. In light of the explanation in *Adkins*, the result here is pretty clear.

As in *Adkins*, no one contends here that Jury acted "pursuant to official policy" when he decided to bar Plaintiff from future LACA meetings. Nor is there evidence in any of the discovery that either Jury or Meredith had final policymaking authority such that JCBE might be liable under the *Monell* doctrine. Moreover, the Court has found no state law placing final policymaking authority over teacher discipline with principals or human relations managers.FN5 All state laws appear to vest employee policy decisions in either the school board or the superintendent. *See* KRS §§ 161.790, 160.370 & 160.340.

> FN5. The only defendants involved in the decision of how to reprimand Plaintiff were Jury (a principal) and Meredith (the human relations manager).

No evidence suggests that Defendant Daeschner, the superintendent, approved Jury's action. Even if Daeschner was eventually made aware of the reprimand and did not remove it, such a failure to act does not give rise to school board liability. *See Adkins*, 982 F.2d at 958 ("The fact that the Board did not question Whitaker's decision to not recommend employment for Mrs. Adkins is immaterial. The plurality opinion in *Praprotnik* addressed this question: 'Simply going along with discretionary decisions made by one's subordinates, however, is not a delegation to them of the authority to make policy.'"). Here, as in *Adkins*, Jury's 2005 Reprimand did not represent fulfillment of any established JCBE custom or policy, nor was it undertaken by a final decision maker, which appears to be JCBE or Daeschner. It was a discretionary act taken in special circumstances and cannot

be deemed a basis for JCBE's direct liability. Plaintiff claims no other basis for liability on the part of JCBE.

Therefore, the Court finds, as a matter of law, that JCBE is not liable under § 1983, either directly or through any official capacity claim.

*Baar*, 686 F. Supp. 2d at 704-06.

We find no error. Baar failed to establish that Jury and Meredith acted pursuant to a policy or custom of JCBE. And, Baar does not challenge that under Kentucky law, employee policy decisions are vested in the school board or superintendent. *See* Ky. Rev. Stat. Ann. §§ 161.790, 160.370 and 160.340. He nonetheless asserts that Meredith was the final decision-maker in his 2005 reprimand because he had no recourse beyond her, such as a direct appeal to the Board of Education, and because the union had abandoned his cause. He also contends that, at least in his case, Meredith was the final policymaking authority over him.

As the district court recognized, the actions of a single official can only create liability for the local government where that official has final policymaking authority, and whether an official has such final authority is a question of state law. *Adkins*, 982 F.2d at 957 (citing *Praprotnik*, 485 U.S. at 123). Under Kentucky law neither Meredith or Jury could have final policy-making authority over Baar.

For the reasons stated, we affirm the district court's grant of summary judgment to Defendants.

## VI

On cross-appeal, Defendants assert that the district court erred in denying their motion for costs pursuant to an Offer of Judgment, Fed. R. Civ. P. 68, because the Offer was not ambiguous,

Baar did not obtain a judgment more favorable than the Offer, the district court failed to determine how many hours Baar's attorney expended on unsuccessful claims that are unrelated to Baar's sole successful claim, and that Baar should not be permitted to recover attorney fees and costs because the billing and cost records are woefully imprecise.

We review for clear error the district court's factual findings concerning the circumstances under which an offer of judgment pursuant to Fed. R. Civ. P. 68 is made, and its legal interpretations of Rule 68 de novo. *Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 837 (6th Cir. 2005). Review of the district court's award of attorney fees and costs is for abuse of discretion. *Imwalle v. Reliance Med. Prod., Inc.*, 515 F.3d 531, 551 (6th Cir. 2008).

One of Defendants' claims is raised for the first time on appeal– that $1,415.57 in costs should not have been awarded to Baar. Because Defendants did not object below to this amount, *see* R.E. 163-2 at 13, we deem it waived. *United States v. Dyer*, 580 F.3d 386, 393 n.3 (6th Cir. 2009). Defendants' remaining claims are thoroughly addressed in the district court's opinion, which we adopt. *Baar*, 2010 WL 1949667 (W.D. Ky. May 13, 2010).

## <u>CONCLUSION</u>

We **AFFIRM** the district court's grant of summary judgment to Defendants, its award of attorney fees and costs to Baar, and its denial of Defendants' motion for costs.